

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2000

# Parkview Partnership v. City of Lebanon

Precedential or Non-Precedential:

Docket 99-3828

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Parkview Partnership v. City of Lebanon" (2000). *2000 Decisions.* Paper 174.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 23, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-3828

PARKVIEW ASSOCIATES PARTNERSHIP;
CHAM NAGARAJ; SHUSHELLA NAGARAJ;
DAVID SIMPSON; EDWARD SHEIB,
        Appellants

v.

CITY OF LEBANON; CITY OF LEBANON
ZONING HEARING BOARD

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 98-cv-00455)
District Judge: Hon. Sylvia H. Rambo

Argued June 13, 2000

Before: SLOVITER, BARRY and ALDISERT, Circuit  Judges

(Filed August 23, 2000)

        Mark Steven Colucci (Argued)
        Youngstown, Ohio 44503

         Attorney for Appellants

        Jonathan F. Ball (Argued)
        Marshall, Dennehey, Warner,
         Coleman & Goggin
        Philadelphia, PA 19103

         Attorney for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Plaintiffs Parkview Associates Partnership, Cham
Nagaraj, Shushella Nagaraj, David Simpson, and Edward
Sheib (collectively "Parkview") appeal the District Court's
order dismissing its action against the City of Lebanon and
the City of Lebanon Zoning Hearing Board for lack of
subject matter jurisdiction. We must decide whether the
District Court erred in holding that the Rooker-Feldman
doctrine precluded it from entertaining a suit challenging
the denial of a zoning permit as violative of federal and
state anti-discrimination statutes because there had been a
state court appellate, on-the-record review of the adverse
zoning decision.

II.

The underlying dispute stemmed from the efforts of
Parkview to obtain a zoning permit to convert the former
Oakwood Residential Care and Nursing Home, a nursing
home and personal care facility in the City of Lebanon, into
a personal care facility. Oakwood operated as a non-profit
home with 28 nursing beds and 22 personal care beds until
its closure on November 24, 1994. It was located in an area
zoned as a Residential Low Density District in the City of
Lebanon. The City's zoning ordinance does not permit a
personal care facility in that area. However, the home,
including its personal care portion, had operated at that
location for more than 50 years and, as it had been in
existence before the adoption of the zoning ordinance, was
considered a valid non-conforming use.

In November 1993, Parkview entered into an agreement
to purchase Oakwood's real estate and facilities to be
converted into a full personal care facility with no nursing
beds.1 On November 29, 1993, Parkview obtained a zoning
_____

1. The agreement was actually assigned to Parkview by one of its
principals.

2

use permit from a city zoning officer to operate a 70-bed personal care home at the Oakwood location as a continuation of the existing non-conforming use. On March 2, 1994, however, two residents of the neighborhood where Oakwood was located filed an appeal with the City of Lebanon Zoning Hearing Board (the "Board") objecting to the issuance of the zoning permit on the ground that the proposed use was a substantial change in use that was more non-conforming than the existing use.

After hearings held in April 1994, the Board revoked Parkview's permit. It found that the zoning officer who had issued the permit acted beyond his authority when he issued the permit without requiring a hearing. The Board concluded that Parkview's proposed use would change the essential character of the prior use and would increase non-conformity, thus making it ineligible for a special exception permit.

Parkview appealed the Board's decision to the Court of Common Pleas of Lebanon County under the procedure set out in Pa. Stat. Ann. tit. 53, S 11002-A. Although the parties have not described the statutory procedure, it appears that the Court of Common Pleas may hold a hearing and receive additional evidence in considering the appeal, see Pa. Stat. Tit. 53, S 11005-A, but if the court does not take additional evidence, then it, the Commonwealth Court, and/or the Supreme Court of Pennsylvania may overturn the Zoning Hearing Board's decision only if the Zoning Hearing Board committed an abuse of discretion or an error of law. See Baker v. Chartiers Township Zoning Hearing Bd., 677 A.2d 1274, 1276 (Pa. Commw. Ct. 1996). "A conclusion that the zoning hearing board abused its discretion may be reached only if its findings are not supported by substantial evidence." Id.

In its appeal to the court, Parkview set forth 39 separate reasons why the Board's decision was an abuse of discretion and/or contrary to law. Although Parkview alleged in its notice of appeal to the Court of Common Pleas that the Board's consideration of the age of putative residents was illegal under state and federal anti-discrimination statutes, it did not allege the disability-

3

based discrimination claims that it now presents in federal court.

The Court of Common Pleas affirmed the Board's decision after reviewing the record before the Board to determine whether there was substantial evidence to support its decision. The court did not mention Parkview's allegations of age discrimination, defining its duty in the appeal as "to examine the record and determine whether the board committed either an abuse of discretion or an error of law concerning the issues raised by Parkview," App. at 62, and characterizing Parkview's claims as challenging the Board's application of the zoning laws to the evidence before it. The court described Parkview's challenges to the Board's decision as follows:

> 1. Whether Objectors filed a timely appeal from the issuance of the use permit to Parkview by the City Zoning Officer.
>
> 2. Whether the City Zoning Officer was acting within his authority when the permit was issued.
>
> 3. Whether the proposed use of the facility by Parkview qualifies as a permitted use by special exception as a convalescent home, or whether the proposed non-conforming use was equally or more appropriate to the use district than the existing non-conforming use.

App. at 63.

Parkview appealed the decision of the Court of Common Pleas to the Commonwealth Court of Pennsylvania, which also affirmed after on-the-record review. Parkview filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied.

On September 7, 1994, while its appeal was pending in the Court of Common Pleas, Parkview filed a second permit application with the City. This time the proposed use was for a 50 to 53 bed personal care home on the Oakwood site. The City zoning official denied the application, finding that the proposed use was a conversion of a non-conforming use that required a special exception. Parkview appealed the denial to the Zoning Hearing Board by filing a petition for

4

a special exception. The Board held a hearing on October 5, 1994, and issued a written opinion on November 14, 1994, finding, inter alia, that the proposed change of use would significantly change the character of the neighborhood. Parkview appealed the Board's decision to the Court of Common Pleas, which affirmed after on-the-record review. Parkview appealed that decision to the Commonwealth Court of Pennsylvania on May 27, 1997 but subsequently withdrew its appeal.

On March 19, 1998, Parkview filed suit in the United States District Court for the Middle District of Pennsylvania against the City of Lebanon and the City of Lebanon Zoning Hearing Board (collectively "the City") alleging that the Board's denials of the zoning permits were acts of discrimination on the basis of disability that violated the Fair Housing Act, 42 U.S.C. SS 3601-3631, the Americans with Disabilities Act, 42 U.S.C. SS 12101-12213, the Rehabilitation Act of 1973, 29 U.S.C. SS 701-796(1), and the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, SS 951-963. The City moved for summary judgment on all counts arguing, inter alia, that the District Court lacked jurisdiction over the action under the Rooker-Feldman doctrine. The District Court granted the motion on that ground, holding that Parkview's disability-based discrimination claims were barred under the Rooker-Feldman doctrine even though Parkview had not raised, and the state court had not decided, those claims in the state proceeding.

Our review of the District Court's grant of summary judgment and its application of the Rooker-Feldman doctrine is plenary. See Gulla v. North Strabane Township, 146 F.3d 168, 171 (3d Cir. 1998).

III.

The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. S 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision. Section 1257 states, in relevant part:

5

> [f]inal judgments or decrees rendered by the highest
> court of a State in which a decision could be had, may
> be reviewed by the Supreme Court by writ of certiorari
> where the validity of a treaty or statute of the United
> States is drawn in question or where the validity of a
> statute of any State is drawn in question on the ground
> of its being repugnant to the Constitution, treaties, or
> laws of the United States . . . .

The doctrine derives from two Supreme Court decisions,
Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and
District of Columbia Court of Appeals v. Feldman, 460 U.S.
462 (1983). In Rooker, a party to a state court action that
had been affirmed by the state's supreme court brought a
bill in equity in federal district court seeking to have the
state court judgment declared null and void as being in
violation of the United States Constitution. The plaintiffs'
allegations in the federal suit were indistinguishable from
those usually made in an appeal: they claimed that the
state court had given effect to an unconstitutional state
statute and had failed to give effect to a prior decision that
had become law of the case. See 263 U.S. at 415.

The Supreme Court held that the district court lacked
jurisdiction over the action. The Court stated:

> It affirmatively appears from the bill that the judgment
> was rendered in a cause wherein the circuit court had
> jurisdiction of both the subject matter and the parties;
> that a full hearing was had therein; that the judgment
> was responsive to the issues, and that it was affirmed
> by the Supreme Court of the State on an appeal by the
> plaintiffs. If the constitutional questions stated in the
> bill actually arose in the cause, it was the province and
> duty of the state courts to decide them; and their
> decision, whether right or wrong, was an exercise of
> jurisdiction. If the decision was wrong, that did not
> make the judgment void, but merely left it open to
> reversal or modification in an appropriate and timely
> appellate proceeding.

Id. Rooker thus stands for the elementary principle that a
party's recourse for an adverse decision in state court is an
appeal to the appropriate state appellate court, and

6

ultimately to the Supreme Court under S 1257, not a separate action in federal court.

In Feldman, 460 U.S. 462, decided sixty years after Rooker, plaintiffs Marc Feldman and Edward J. Hickey, Jr., filed suit in federal court seeking permission to sit for the District of Columbia bar examination without having attended an ABA accredited law school, a requirement under the rules for bar admission adopted by the District of Columbia Court of Appeals. Prior to filing their federal suit, Feldman and Hickey had each petitioned the District of Columbia Court of Appeals for a waiver of the rule. Both applicants had stressed in their petitions the equitable reasons for waiving the requirement as to them. Feldman's petition had also raised questions of the constitutionality of application of the rule if the District of Columbia Court of Appeals rejected his request. Hickey had submitted evidence of his qualifications and stressed the burden that would be placed on him if the court refused his petition.

After the District of Columbia Court of Appeals denied their petitions for waiver, Feldman and Hickey filed suits in federal district court alleging that the denials of their petitions violated, inter alia, the Fifth Amendment of the United States Constitution and federal antitrust laws. They sought orders from the district court requiring the District of Columbia Court of Appeals to allow them to sit for the bar examination.

The Supreme Court held that the district court lacked jurisdiction over the federal actions. It ruled that the proceedings before the District of Columbia Court of Appeals were judicial in nature and that Feldman and Hickey could not resort to federal court to challenge those judicial decisions. The Court stated:

> [T]he[ ] allegations that the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions in view of its former policy of granting waivers to graduates of unaccredited law schools required the District Court to review a final judicial decision of the highest court of a jurisdiction in a particular case.

7

> These allegations are inextricably intertwined with the
> District of Columbia Court of Appeals' decisions, in
> judicial proceedings, to deny the respondents'
> petitions.

Id. at 486.

Although the Court held that the plaintiffs' claims challenging the District of Columbia Court of Appeals' decisions to deny them waivers of the rule could not be brought in the district court because those challenges were inextricably intertwined with the state court proceedings, the Court permitted district court adjudication of plaintiffs' general claims challenging the constitutionality of the rule itself. The Court explained:

> [T]o the extent that Hickey and Feldman sought review
> in the District Court of the District of Columbia Court
> of Appeals' denial of their petitions for waiver the
> District Court lacked subject-matter jurisdiction over
> their complaints. Hickey and Feldman should have
> sought review of the District of Columbia Court of
> Appeals' judgments in this Court. To the extent that
> Hickey and Feldman mounted a general challenge to
> the constitutionality of [the rule requiring attendance of
> an accredited law school], however, the District Court
> did have subject-matter jurisdiction over their
> complaints.

Id. at 482-83 (footnote omitted).

This court has described the Rooker-Feldman doctrine as precluding lower federal court jurisdiction over claims that were actually litigated or "inextricably intertwined" with adjudication by a state's courts. See Gulla v. North Strabane Township, 146 F.3d 168, 171 (3d Cir. 1998); Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992); see also Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. , 973 F.2d 169, 178 (3d Cir. 1992) (extending application of the doctrine to decisions by lower state courts). Further, we have explained that a federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir.

8

1989) (quoting Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Applying that test to this case, we consider first whether Parkview's disability-based discrimination claims were actually litigated by the state court. We conclude that they were not. The record makes plain, and the City does not dispute, that Parkview did not present its disability-based discrimination claims to the state courts on appeal from the Board's decisions. Parkview neither cited the relevant statutes nor argued that the Board's decisions violated federal or state law prohibiting discrimination on the basis of disability. Moreover, the state courts' opinions reveal that the courts reviewed the Board's decisions solely in their appellate capacity, taking no new evidence, and affirmed the Board's decisions as supported by substantial evidence in the record without deciding whether the decisions violated federal or state anti-discrimination laws. The City does not disagree.

We next consider whether Parkview's claims are inextricably intertwined with the previous state court adjudication. Again, we conclude that they are not. As discussed above, the state court proceedings in this case were limited to appellate, on-the-record review of whether the Zoning Hearing Board abused its discretion or committed an error of law in determining that Parkview's proposal would change the essential character of the prior use and would increase nonconformity. In order to decide Parkview's claims alleging that the Board based its decisions on considerations prohibited by state and federal anti-discrimination statutes, the District Court here would not have to review the state courts' determinations that the Board's decisions were supported by substantial evidence in the record. In other words, adjudication by a federal court of Parkview's discrimination claims would not require the federal court to determine that the state court was wrong. See Centifanti, 865 F.2d at 1430.

Our conclusion that Rooker-Feldman does not bar jurisdiction in the District Court over Parkview's discrimination claims is consistent with the overwhelming precedent in this court construing the Rooker-Feldman doctrine narrowly. See Whiteford v. Reed, 155 F.3d 671,

9

674 (3d Cir. 1998), cert. denied, 120 S. Ct. 2231 (2000) (holding that Rooker-Feldman did not bar jurisdiction over a plaintiff 's claim that had been rejected on procedural grounds by the state court); Gulla, 146 F.3d at 172-173 (holding that Rooker-Feldman did not bar jurisdiction over plaintiffs' federal constitutional claims because those claims had been dismissed in the state court for lack of standing); Ernst v. Child & Youth Servs., 108 F.3d 486, 491-92 (3d Cir. 1997) (holding that Rooker-Feldman did not bar jurisdiction over plaintiff 's claim because the state court had not considered that claim and because a federal court ruling on plaintiff 's claim "would not have required the court to find that the state court judgments . . . were erroneous"); FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 841-42 (3d Cir. 1996) (holding that Rooker-Feldman did not bar jurisdiction over plaintiff 's claim because a federal court's determination of the claim "would not need to conclude that the state court's decision was erroneous"); Marks v. Stinson, 19 F.3d 873, 885 n.11 (3d Cir. 1994) (holding that Rooker-Feldman did not bar jurisdiction over plaintiff 's claims because the district court could (and did) find that the claims had merit without also finding that the state court had erred); cf. Ivy Club v. Edwards, 943 F.2d 270, 284 (3d Cir. 1991) (holding that Rooker-Feldman did not bar jurisdiction where plaintiff had reserved its federal claim under England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964), on appeal to the state court from an agency's decision).

Yet the City argues, and the District Court agreed, that Rooker-Feldman barred the District Court from hearing Parkview's claims in this case even though the state court's adjudication was limited to on-the-record review of the Board's decisions. Relying on a footnote in Feldman and on language from this court's decision in Valenti v. Mitchell, 962 F.2d 288 (3d Cir. 1992), the District Court stated that "Rooker-Feldman applies not only to claims which were actually brought before the state court, but also to claims which could have been raised in that forum." Parkview Assocs. Partnership v. City of Lebanon, No. 98-0455, slip op. at 10 (M.D. Pa. Sept. 8, 1999). At argument, the City relied on language from our decision in Guarino v. Larsen,

10

11 F.3d 1151 (3d Cir. 1993), as additional support for this position.

The City's argument, however, fails to appreciate the distinction between Parkview's situation and that to which the footnote in Feldman was directed. Because the state courts did not consider or rule upon Parkview's discrimination claim, the only basis to hold Rooker-Feldman applicable would be if Parkview's challenge to the Board's decisions were inextricably intertwined with the state courts' appellate review of those decisions. It is not.

In Feldman, the Court held that any challenges brought by Feldman or Hickey to the denial by the District of Columbia Court of Appeals of their requested waivers of the rule requiring attendance at an ABA accredited law school for admission to take the bar examination were inextricably intertwined with that court's adjudication. See Feldman, 460 U.S. at 486-87. In a footnote, the Court expressly rejected the position taken by the Court of Appeals for the Fifth Circuit in Dasher v. Supreme Court of Texas, 658 F.2d 1045 (5th Cir. 1981), that "a federal district court has jurisdiction over constitutional claims asserted by a plaintiff who has been denied admission to a state bar in a state-court judicial proceeding if he failed to raise his constitutional claims in the state court." Feldman, 460 U.S. at 483 n.16. The Court explained that the district court under those circumstances would lack jurisdiction even over the claims that had not been raised in the state court proceedings if those claims were "inextricably intertwined" with the state court's adjudication. It stated:

> If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff 's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision. This the district court may not do.
>
> Moreover, the fact that we may not have jurisdiction to review a final state-court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States district

11

> court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.

Id. at 483-84 n.16.

The Feldman footnote thus picks up on a point made in the text and makes clear that if a plaintiff 's claims in federal court are inextricably intertwined with a previous state court adjudication, the district court lacks jurisdiction over those claims even if they were not raised in the state court. The footnote does not, as the City would have us believe, stand for the much broader proposition that Rooker-Feldman precludes lower federal court jurisdiction over all claims that could have been raised in a previous state court proceeding. Such a reading would be inconsistent with the Court's other holding in Feldman that the district court did have jurisdiction over the general challenge to the constitutionality of the rule. The Court approvingly referred to lower court decisions recognizing "[t]he difference between seeking review in a federal district court of a state court's final judgment in a bar admission matter [which was barred] and challenging the validity of a state bar admission rule [which was not]." Id. at 483-84. If the district court is "simply be[ing] asked to assess the validity of a rule promulgated in a nonjudicial proceeding . . . the district court is not reviewing a state court judicial decision." Id. at 486.

Because the Supreme Court held that the claim of Feldman and Hickey that the admission rule was unconstitutional was not barred by the earlier state court adjudication, the district court had jurisdiction over that claim and the matter was remanded to it. The obvious lesson is that the mere fact that the plaintiffs could have brought their constitutional challenge in state court did not automatically trigger the Rooker-Feldman jurisdictional bar.

We applied Feldman in Guarino v. Larsen , 11 F.3d 1159. Judge Angelo Guarino, a senior judge of the Pennsylvania state judiciary, sought to challenge in federal court the Pennsylvania Supreme Court's revocation of his judicial assignment, contending that the order deprived him of his

12

liberty and property. Before the revocation was made permanent, the Pennsylvania Supreme Court issued a rule to show cause on Judge Guarino why the order should not remain in effect. Judge Guarino did not respond and the Court then affirmed its earlier order, reasoning that the temporary assignment of a retired judge is within its discretion and may be revoked by it. See id. at 1155. When Judge Guarino sought to raise constitutional challenges to the state court's decision in federal court, we held that the district court had no jurisdiction even though Judge Guarino had not raised those challenges in the state court. In doing so, we stated that "a litigant must present all of his or her claims arising from the same transaction in order to avoid waiving those claims he or she does not raise." Id. at 1161 n.7.

The underlying premise to our statement, however, was that Judge Guarino's challenges were inextricably intertwined with the state court adjudication. This was evident because Judge Guarino sought to challenge as unconstitutional the very decision of the Pennsylvania Supreme Court revoking his judicial assignment. It followed that all of Judge Guarino's federal claims, even if they had not been raised in the state court proceeding or, as we explained there, even if they were "not inextricably tied to the state law issues explicitly decided by the Pennsylvania Supreme Court," id. at 1160, were inextricably intertwined with the state court's adjudication. Therefore, we held that they were barred in the lower federal courts under Rooker–Feldman.

The year before, we were presented in Valenti with another Rooker–Feldman issue in an emergency appeal taken in the hurried context of an impending primary election. As a result of a required and contested reapportionment, the Pennsylvania Supreme Court revised the election calendar. Candidates and representatives for prospective candidates brought suit in district court alleging that the state court-imposed deadline forfiling nominating petitions to the state primary election violated their rights to equal protection and free speech guaranteed by the United States Constitution. See Valenti , 962 F.2d at 296. However, those same parties had previously petitioned

13

for relief in the state supreme court from the court-imposed filing deadline on the ground that the deadline violated their rights to equal protection, a claim that had been rejected by the state court. Stating that the plaintiffs could not "be allowed to escape Rooker-Feldman by raising a new constitutional theory in federal court," we held that their free speech as well as their equal protection claim could not be brought in federal court. Id. Notably, in the next sentence, the opinion shifted its rationale from Rooker-Feldman to preclusion, stating: "Under principles of claim preclusion, they had a full and fair opportunity to litigate their first amendment claim in the state court, and here they merely seek a second bite at the apple." Id. (emphasis added). But, as with Guarino, that discussion came only after it was determined that the First Amendment claim in federal court was inextricably intertwined with the state court adjudication. See id. (citing Feldman, 460 U.S. at 482 n.16).

Our holding here that Rooker-Feldman does not bar jurisdiction in the District Court over Parkview's claims recognizes that the Rooker-Feldman doctrine is distinct from the affirmative defenses of preclusion.2 In Feldman, the Supreme Court sub silentio acknowledged the difference between the doctrines when, after directing remand of plaintiffs' general constitutional challenges, it expressly refrained from considering res judicata, leaving that question to the district court. See 460 U.S. at 487-88. Although occasionally the doctrines may overlap and even be blurred, they are not coextensive. As the Seventh Circuit has explained:

> Equating the Rooker-Feldman doctrine with preclusion is natural; both sets of principles define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation

---

2. Issue preclusion, otherwise known as collateral estoppel, bars re-litigation of an issue identical to that in a prior action. Claim preclusion,
otherwise known as res judicata, prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties
might have, but did not, assert in that action. See Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1070 (3d Cir. 1990). We take no position on whether Parkview's claims might be barred under these doctrines.

14

following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. S 1738, which requires the federal court to give the judgment the same effect as the rendering state would. When the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not. The Rooker-Feldman doctrine, by contrast, has nothing to do with S 1738. It rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil cases lies in the Supreme Court of the United States, and parties have only a short time to invoke that jurisdiction.

GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993) (citations omitted).

This distinction between Rooker-Feldman and preclusion is important because Rooker-Feldman, as a jurisdictional doctrine, must override preclusion doctrines where it applies. Were we to hold that Rooker-Feldman was simply a jurisdictional version of claim preclusion, we would run afoul of the Supreme Court's directive that state law rather than federal law determines whether a claim brought in federal court is precluded by a prior state court adjudication. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82 (1982) (holding that a federal court presented with a Title VII case should apply state preclusion law when the plaintiff had previously obtained in state court on-the-record review of a state agency's decision on the plaintiff 's discrimination claim).

Our decision is in line with the opinion of the Court of Appeals for the Seventh Circuit, the only other court of appeals to have faced this precise issue. In Centres, Inc. v. Town of Brookfield, Wis., 148 F.3d 699, 703 (7th Cir. 1998), the court held Rooker-Feldman did not bar a suit brought in federal court alleging that a local zoning board decision denying a permit violated due process rights, even though the plaintiff in federal court had appealed the zoning board decision to state court for on-the-record review. According to the court, the doctrine of claim preclusion, not Rooker-Feldman, provided the proper framework for considering

15

whether the plaintiff had waived its claims by appealing the agency's decision to the state court.

IV.

We thus hold that Rooker-Feldman does not bar the District Court's jurisdiction over the claims brought by Parkview in this case. In so holding, we do not intimate any view of the merits of Parkview's case or whether preclusion doctrine is applicable. The City raised a series of challenges to the complaint, but because the District Court held there was no jurisdiction, it did not reach any other issue. On remand, it will undoubtedly turn to other issues. We will reverse the order of the District Court dismissing for lack of jurisdiction and will remand for further proceedings not inconsistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16