**Dianne L. BASS, Plaintiff,**

v.

**Johnny J. BUTLER et al., Defendants.**

**CIVIL ACTION NO. 98–4112.**

United States District Court,
E.D. Pennsylvania.

Sept. 26, 2002.

---

Ronald Jay Smolow, Smolow & Landis, Trevose, PA, for Plaintiff.

Claudia M. Tesoro, Philadelphia, PA, for Defendant.

## OPINION

BAYLSON, District Judge.

Plaintiff asks this court to grant her relief specifically contrary to a judgment previously entered by a Pennsylvania court. A federal district court approaching such a collision may have to decide "which should yield to the other at this intersection"[1] but must surely approach this intersection with caution; if a collision cannot be avoided, the impact may be more than merely the result in the particular case. In the case now before this Court, the plaintiff has lost her workers' compensation claim in state court and raises federal constitutional issues in seeking to overturn that result. The threshold legal issue presented is not whether the state court reached a wrong result, or even whether a federal court, if the claim had initially been presented in federal court, would have reached a different result; the issue is whether a federal district court has subject matter jurisdiction. Although the United States Supreme Court, by virtue of 28 U.S.C. § 1257, has the power to overturn judgments of state courts, which derives from the supremacy clause of the Constitution, this power is not granted to lower federal courts. This principle, usually referred to as the *Rooker–Feldman* doctrine,[2] is an important border line in the landscape of federalism, and has developed to avoid collisions between the lower federal courts and state courts. This opinion will examine whether the plaintiff's claim is barred by the *Rooker–Feldman* doctrine.

This case is on remand from the Third Circuit, and its lengthy and substantively important history is set forth below.

Presently before the Court is the Post–Remand Motion to Dismiss on Jurisdictional Grounds of defendants Johnny J. Butler ("Butler"), Secretary of Labor and Industry for the Commonwealth of Pennsylvania; Richard A. Himler[3] ("Himler"), Director of the Pennsylvania Bureau of Workers' Compensation; and the Commonwealth of Pennsylvania (collectively

---

1. *Heck v. Humphrey*, 512 U.S. 477, 492, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (Souter, J., concurring) (discussing potential conflict between federal civil rights and habeas corpus statutes).

2. The *Rooker–Feldman* doctrine's name derives from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S.

462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See infra* II.A for a discussion of the *Rooker–Feldman* doctrine.

3. Defendant Himler was the Director of the Bureau of Workers' Compensation when this action was filed, but he retired in March 2000. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Richard Thompson, the current Director, is substituted as a defendant.

"Defendants"), the Memorandum of Law Sur *Rooker–Feldman,* Claim Preclusion, and Justiciability of Class Claims of plaintiff Dianne L. Bass ("Plaintiff" or "Bass"), and Plaintiff's Memorandum of Law in Opposition to Defendants' Post Remand Motion to Dismiss on Jurisdictional Grounds. The Court heard oral argument on August 19, 2002. For the reasons which follow, Defendants' Motion will be granted.

## I. *Background and Procedural History*

Plaintiff began the proceedings leading to this opinion by filing a claim before the Pennsylvania Bureau of Workers' Compensation ("Bureau"). In her complaint in this Court, she alleges that the Bureau denied her benefits through procedures which deprived her of rights guaranteed by the United States Constitution. Her complaint, styled as a class action, asserts that the Bureau denied her claim without notice that her case had been reassigned to, and decided by, workers' compensation judges ("WCJs") who were neither present nor presiding when she and all of her witnesses testified. Plaintiff, who seeks declaratory and injunctive relief, costs and attorneys fees, alleges that the state statute allowing WCJs to make credibility determinations and ultimate decisions without themselves hearing testimony violates due process, as guaranteed by the U.S. Constitution. That statute, Section 415 ("Section 415") of the Pennsylvania Workers' Compensation Act, 77 Pa.Stat. Ann. § 851 provides:

"At any time before an award or disallowance of compensation or order has been made by a referee to whom a petition has been assigned, the department may order such petition heard before any other referee. Unless the department shall otherwise order, the testimony taken before the original referee shall be considered as though taken before the substituted referee."

The following uncontested facts illustrate the complicated procedural history of this matter as it has navigated the state and federal courts, and are very relevant to the analysis.

### A. *State Action*

On November 30, 1992, Plaintiff filed a workers compensation claim alleging that she suffered a workplace injury on December 20, 1990. She later amended the injury date to January 8, 1991. The parties bifurcated the issue of whether Plaintiff was injured in the scope of her employment. On October 28, 1994, WCJ Carol Mickey held that Plaintiff was injured within the scope of her employment, but before deciding the balance of the case, WCJ Mickey resigned, and Plaintiff's case was transferred to WCJ Peter Perry, who received additional testimony and evidence. However, before closing the record, WCJ Perry transferred the case to WCJ Michael Rosen, but Plaintiff was never notified of the transfer.

On August 8, 1996, WCJ Rosen and WCJ Perry signed a decision denying Plaintiff's claim, and the Workers' Compensation Appeal Board ("WCAB") affirmed. Plaintiff appealed, arguing that she was denied due process by the participation of WCJ Rosen. The Commonwealth Court vacated the WCAB's order and remanded to allow Plaintiff to establish prejudice arising from the assignment of her claim to WCJ Rosen without notice. *Bass v. Workers' Compensation Appeal Board (Howard D. Rosenman, M.D.),* No. 182 C.D.1998, slip op. at 8 (Pa.Commw.Ct. Aug. 12, 1998). After considering briefs and oral arguments, the WCAB concluded that Plaintiff failed to show prejudice. The WCAB reinstated its initial order denying relief. On February 18, 2000, the Commonwealth Court affirmed the WCAB's decision, concluding that although Plaintiff's facial challenge to Section 415

was procedurally barred, Section 415 was constitutional. *Bass v. Workers' Compensation Appeal Board (Howard D. Rosenman, M.D.)*, No. 842 C.D.1999, slip op. at 4–6 (Pa.Commw.Ct. Feb. 18, 2000) (*"Bass v. WCAB II"*). The Pennsylvania Supreme Court denied Plaintiff's petition for allocatur. *Bass v. Workers' Compensation Appeal Board*, 563 Pa. 691, 760 A.2d 856 (2000). Plaintiff did not seek certiorari from the United States Supreme Court under 28 U.S.C. § 1257.

## B. *Federal Action*

On August 6, 1998, while her state court proceedings were ongoing, Plaintiff filed this suit under 42 U.S.C. § 1983 against the Secretary of Labor and Industry for the Commonwealth of Pennsylvania, the Director of the Pennsylvania Bureau of Workers' Compensation, and the Commonwealth of Pennsylvania. Defendants Butler and Himler twice moved to dismiss unsuccessfully. In a memorandum order on April 30, 1999, this Court held that Plaintiff pleaded a protected property interest and that abstention was inappropriate because the workers' compensation proceedings were still in the administrative courts, which lacked the authority to decide constitutional issues. *Bass v. Butler*, No. 98–4112, 1999 WL 391483, **2–3 (E.D.Pa. Apr. 30, 1999).

After holding hearings in which testimony was taken from WCJs Perry and Rosen, this Court dismissed Plaintiff's case without prejudice to her reinstating the suit after she exhausted her appeals in the state courts. *Bass v. Butler*, No. 98–4112, slip op. at 1–2 (E.D.Pa. Feb. 3, 2000). Shortly thereafter, the Commonwealth Court denied Plaintiff's second appeal. She moved in this Court for reconsideration, and her motion was denied because Plaintiff had still not exhausted all of her

state appeals. *Bass v. Butler*, No. 98–4112, slip op. at 2 (E.D.Pa. May 18, 2000). This Court's order explained that Plaintiff could still appeal her state action to the Pennsylvania, and then the United States, Supreme Courts. *Id.* Shortly after this Court's order, the Pennsylvania Supreme Court denied allocatur. Plaintiff did not seek certiorari from the U.S. Supreme Court, but did appeal this Court's dismissal of her federal complaint. The United States Court of Appeals for the Third Circuit vacated this Court's order dismissing and denying reconsideration of Plaintiff's complaint, and found that abstention of jurisdiction by the district court was no longer applicable and Plaintiff's appeal was moot. *Bass v. Butler*, 258 F.3d 176, 179 (3d Cir.2001). The Third Circuit remanded to this Court to determine the threshold issues in this case, particularly subject matter jurisdiction, and if that were found proper, preclusion, and class certification. The Third Circuit explained its holding as follows:

> "Under the facts and posture of this case, we believe it appropriate for the District Court to determine in the first instance the threshold issues, including jurisdiction, preclusion, and class certification. Of course, if Bass passes the threshold, she will be entitled to full judicial process on the merits. The prudential value of having the benefit of District Court consideration and analysis outweighs the judicial economy of having the Court dispose of these issues now."

*Bass v. Butler*, 258 F.3d at 180.

Having vacated and remanded this matter, the Third Circuit has directed this Court [4] to determine the threshold issues in this case, particularly subject matter jurisdiction.[5] That examination will now be undertaken.

---

4. On remand, this case is now before a different district court judge.

5. The Third Circuit noted that the "District Court would not reach [claim and issue pre-

## II. *Analysis*

On remand, Defendants assert that the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction because this Court may not act in an appellate capacity nor can it be asked to reverse the Commonwealth Court's decision.

Defendants assert that the *Rooker–Feldman* doctrine applies in the instant case because Plaintiff's federal claims were in fact decided by the Pennsylvania Commonwealth Court. Def.'s Post Remand Mot. to Dismiss at 6–8. Defendants go on to argue that even if Plaintiff's constitutional claims were not squarely adjudicated by the Commonwealth Court, that the *Rooker–Feldman* doctrine still applies because Plaintiff's facial challenge to the statute is "inextricably intertwined" with the Commonwealth Court's decision. *Id.* at 8–16. Finally, Defendants claim that Plaintiff lacks standing to proceed. *Id.* at 16–19.

Plaintiff vigorously opposes dismissal, contending that the Commonwealth Court did not decide the constitutionality of Section 415 and that the question is not "inextricably intertwined" with the Commonwealth Court's decision. Pl.'s Mem. Law at 4. She further states that even if the issues in the state and federal actions are "inextricably intertwined," the *Rooker–Feldman* doctrine does not bar her facial constitutional challenge to Section 415 because she requests prospective relief. *Id.* at 6–12. Plaintiff also asserts that neither claim preclusion nor issue preclusion bar her challenge because the parties and claims in the state and federal actions are not identical. *Id.* at 14–19. Finally, Plaintiff proposes that the claims of the class are justiciable, that she is an appropriate class representative, and even if she is not, that the class should have the opportunity to substitute a representative plaintiff. *Id.* at 19–25.

### A. *Rooker–Feldman Doctrine*

Determining whether this Court has subject matter jurisdiction is the threshold issue in this case, and the *Rooker–Feldman* doctrine plays the central role in that analysis. The *Rooker–Feldman* doctrine is derived from 28 U.S.C. § 1257[6] and the understanding that "a United States District Court has no authority to review judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine precludes lower federal courts from exercising jurisdiction over claims that were actually litigated in state court or are "inextricably intertwined" with a state court adjudication. *Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000).[7] For *Rooker–Feldman* purposes, a federal claim and a state claim are inextricably intertwined, where, if the federal claim succeeds, the state court judgment would be effectively voided. *Gulla v.*

---

clusion] should the Court conclude that the *Rooker–Feldman* doctrine divests it of subject matter jurisdiction." *Bass v. Butler*, 258 F.3d 176, 180 n. 2 (3d Cir.2001).

**6.** 28 U.S.C. § 1257 states in relevant part:

"[F]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States."

**7.** The doctrine has been extended to decisions of lower state courts and does not apply exclusively to state courts of last resort. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth.*, 973 F.2d 169, 178 (3d Cir.1992).

*North Strabane Township,* 146 F.3d 168, 171 (3d Cir.1998).

In recent years, the Third Circuit has taken numerous opportunities to address the *Rooker–Feldman* doctrine. A discussion of the leading cases follows.

In *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 836 (3d Cir. 1996), a citizen's advocacy group and two of its members appealed from the dismissal of their § 1983 claim against the Pennsylvania Court of Common Pleas and a judge of that court challenging the constitutionality of gag orders issued in a then-ongoing, celebrated child custody case. When the advocates tried to intervene in the court proceedings, the family division of the Court of Common Pleas refused to accept the motion; the Pennsylvania Superior Court would not hear their motion for a writ of mandamus; and the Pennsylvania Supreme Court denied their petition for the court to exercise its King's Bench jurisdiction[8] to declare the gag orders unconstitutional. *Id.* at 836–37. The federal district court dismissed all of the plaintiffs' claims against the Court of Common Pleas on Eleventh Amendment grounds and dismissed the claims against the judge, holding that it did not have jurisdiction under the *Rooker–Feldman* doctrine. *Id.* at 837.

The defendants in *FOCUS* asserted that for *Rooker–Feldman* purposes, the decisions of the Court of Common Pleas and Supreme Court were "adjudications" which were "inextricably intertwined" with the plaintiffs' constitutional claims. *Id.* at 840. However, the Third Circuit disagreed. It held that the Common Pleas judge did not decide the plaintiffs' constitutional challenge to the gag order, and in order for the plaintiffs to prevail, the federal court would not have to decide "that the state court decision [on intervention] is wrong." *Id.* at 841. Similarly, the Court held that the Pennsylvania Supreme Court's decision not to exercise its discretionary jurisdiction did not indicate that it had adjudicated the plaintiffs' constitutional claim and therefore the district court was not being asked to "play the role of a reviewing court." *Id.* at 842. Accordingly, the Court held that the *Rooker–Feldman* doctrine did not bar the plaintiffs' federal court action. *Id.*

In *Gulla,* the plaintiff homeowners appealed from the dismissal of their § 1983 claim against their township and a developer alleging that the implementation of a subdivision development plan denied the plaintiffs due process, equal protection, and just compensation. *Gulla,* 146 F.3d at 170. The plaintiffs owned a home in North Strabane Township, Pennsylvania, and a developer was granted permission by the township to subdivide and develop land adjacent to the plaintiffs' property. *Id.* During the excavation process, the plaintiffs' spring and water line in their right-of-way were destroyed, and the developers refused the plaintiffs' requests to make repairs. *Id.* The plaintiffs appealed the township's board of supervisors' approval of the development project to the Court of Common Pleas, alleging state and federal equal protection and due process violations. *Id.* The court dismissed the plaintiffs' appeal and held that they lacked standing under Pennsylvania law to challenge the subdivision approval. *Id.* The plaintiffs appealed that decision to the Commonwealth Court, which affirmed the lower court's decision, and the Pennsylvania Supreme Court granted review, which

8. The Pennsylvania Supreme Court characterizes King's Bench jurisdiction as "extraordinary"—a discretionary jurisdiction to "be invoked sparingly, and only in cases 'involving an issue of immediate public importance.'" *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 842 (3d Cir.1996) (citations omitted).

review was pending at the time of the Third Circuit decision. *Id.*

The plaintiffs then filed a claim in federal district court against the defendants alleging constitutional violations. *Id.* at 170–71. The district court granted the defendants' motion to dismiss because it held that the *Rooker–Feldman* doctrine prevented it from exercising jurisdiction. *Id.* at 171. However, the Third Circuit held that the Common Pleas Court did not expressly or implicitly adjudicate the plaintiffs' constitutional claims but merely concluded that they lacked standing. *Id.* at 172. Such a procedural holding, the Court held, did not reach the merits of the plaintiffs' claims under Pennsylvania law. *Id.* (citations omitted). Therefore, the Court held that *Rooker–Feldman* did not apply because the district court could consider the plaintiffs' constitutional claims "without disturbing the state court's conclusion[,]" and the decisions of the Court of Common Pleas and Commonwealth Court were not inextricably intertwined with the plaintiffs' federal claims. *Id.* at 172–73.

In *Parkview*, the plaintiffs, a personal care facility and individuals associated with it, appealed from the dismissal of their claim against a city and zoning hearing board challenging the denial of the plaintiffs' zoning permit as violating federal and state anti-discrimination statutes. *Parkview*, 225 F.3d at 322. The plaintiffs zoning permit to convert a residential nursing home into a personal care facility was denied after the zoning board decided that the plaintiffs' proposed use was non-conforming. *Id.* The plaintiffs appealed the zoning board's decision to the Court of Common Pleas on numerous grounds including age discrimination in violation of state and federal anti-discrimination statutes. *Id.* at 322–23. That court affirmed the zoning board's decision without reference to the plaintiffs' age discrimination allegations. *Id.* at 323. The Common-

wealth Court affirmed the lower court's decision, and the Pennsylvania Supreme Court denied allocatur. *Id.* During this period, the plaintiffs' application for a second permit for another proposed personal care facility was also denied, which denial was affirmed by the Court of Common Pleas and appealed to the Commonwealth Court, although the plaintiffs subsequently withdrew that appeal. *Id.*

The plaintiffs then filed suit in federal district court alleging that the zoning board's denials of their permits were acts of discrimination based on disability under federal and state law. *Id.* Although the plaintiffs had not raised disability-based discrimination claims in their state actions, the district court held that these claims were barred under *Rooker–Feldman*. *Id.* On appeal, the Third Circuit held that the state courts' opinions revealed that the zoning board's decisions were reviewed solely in their appellate capacity without any new evidence and that plaintiffs' disability-based discrimination claims were not actually litigated in state court. *Id.* at 325–26. Addressing the defendants' argument that *Rooker–Feldman* would apply not only to claims raised in the state courts but also to claims which could have been raised, the Court held that "[b]ecause the state courts did not consider or rule upon Parkview's discrimination claim, the only basis to hold *Rooker–Feldman* applicable would be if Parkview's challenge to the Board's decisions were inextricably intertwined with the state court's appellate review of the those decisions. It is not." *Id.* at 327. The plaintiffs' federal claims were not inextricably intertwined with the previous state adjudication because the state courts strictly reviewed the board's zoning permit denial for abuse of discretion or errors of law, and the district court's adjudication of the plaintiffs' discrimination claims would not require a finding that the state courts were wrong. *Id.* at 326.

Having addressed the leading Third Circuit cases on point, it is clear that the application of the *Rooker–Feldman* doctrine in this case is proper as well as consistent with Third Circuit precedent, which narrowly construes it. The instant case does not present any of the elements which prevented *Rooker–Feldman* from applying in the leading cases discussed above.

First, in *FOCUS* the plaintiffs' constitutional claims were clearly not decided on the merits, whereas the Commonwealth Court decided Plaintiff's constitutional challenge as applied to her when it stated that "the participation of WCJ Rosen did not deprive Bass of a fair adjudication by a qualified fact-finder." *Bass v. WCAB II,* slip op. at 6. Second, in *Gulla,* the state court refused to consider the plaintiffs' constitutional claims because it held the plaintiffs lacked standing, a procedural finding that did not adjudicate the plaintiffs' claims on the merits. Plaintiff in the instant case clearly had standing when her federal action was filed. Third, in *Parkview,* the Court held that *Rooker–Feldman* did not apply in part because the state and federal claims were not inextricably intertwined, which they are in the instant case, as discussed further below.

### 1. *The State Court's Holding*

"The first step in a *Rooker–Feldman* analysis is to determine 'exactly what the state court held.'" *Gulla,* 146 F.3d at 171 (quoting *FOCUS,* 75 F.3d at 840). "If a state court considers and rejects a constitutional claim on the merits, a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of *Rooker–Feldman's* jurisdictional bar." *Id.* at 172.

 Plaintiff's unspecified allegation in her first appeal to the Commonwealth Court that she was denied due process is not the same as a specific allegation that the statute is unconstitutional because it permits judges who did not personally hear the witnesses to decide the case. Indeed, the Commonwealth Court held that "[b]y her failure to challenge the constitutionality of Section 415 in her first appeal to this court and failure to notify the Attorney General of a facial attack on the statute, Bass has waived this issue. *See* Pa. R.A.P. 521. *See also Hill v. Divecchio,* 425 Pa.Super. 355, 625 A.2d 642, 648–49 (1993)." *Bass v. WCAB II,* slip op. at 4.

Rather than ending its analysis with its finding that Plaintiff waived her constitutional challenge to the statute, the Commonwealth Court then went on to discuss Pennsylvania Supreme Court and Commonwealth Court cases in which the constitutionality of Section 415 was upheld. Specifically, the court noted the Pennsylvania Supreme Court's reliance on Section 415 in *Arena v. Packaging Systems Corp.,* 510 Pa. 34, 507 A.2d 18 (1986), in which the Court held that deference must be accorded to the findings of a substituted referee who had not heard live testimony. *Bass v. WCAB II,* slip op. at 4–5. The Commonwealth Court further discussed the state supreme court's opinion in *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383, 1387–89 (1985), in which the Court held that a worker's due process rights were not violated when he was not given notice of the substitution of a referee prior to the rendering of a decision.

After several pages of discussion, the Commonwealth Court rendered an alternative holding denying Plaintiff's constitutional challenge as applied to her. The court stated, "In sum, the participation of WCJ Rosen did not deprive Bass of a fair adjudication by a qualified fact-finder." *Bass v. WCAB II,* slip op. at 6. However, the court did not decide Plaintiff's facial constitutional challenge to the statute.

The instant case is analogous to *Guarino v. Larsen*, 11 F.3d 1151, 1160 (3d Cir. 1993), in which the Third Circuit concluded that the district court did not have jurisdiction to consider the constitutional claims of a plaintiff who had the opportunity to raise those claims in state court but chose not to do so. In that case, the plaintiff did not raise his constitutional claims in state court because he reasoned that if those claims were withheld, the state court could not make an adjudication, and therefore the district court would not be deprived of jurisdiction under *Rooker–Feldman*. *Id.* at 1161 n. 6 The Third Circuit wrote:

> "When a litigant fails to attempt to raise [constitutional] claims, it is appropriate to presume that the state court would have been willing to decide his constitutional claims subject to rebuttal by clear evidence to the contrary. Judge Guarino's uncertainty as to whether the Pennsylvania Supreme Court would have considered his constitutional claims is due solely to his own failure to attempt to raise those claims. A litigant suffers no real harm by attempting to raise his or her constitutional claim in state court: if the state court refuses to address the

constitutional claim, the litigant can then raise the claim in federal court without any jurisdictional, abstention, or collateral estoppel problems. Requiring the litigant to attempt to raise those claims is relatively innocuous; we therefore hold that Judge Guarino waived his opportunity to ensure that the Pennsylvania Supreme Court adjudicated all of his legal claims."

*Id.* at 1161–62 (citations omitted).

In light of *Guarino*, it is clear that Bass waived her federal challenge to the constitutionality of Section 415.[9]

### 2. Plaintiff's Prospective Constitutional Challenge

Plaintiff further asserts that the *Rooker–Feldman* doctrine does not bar direct challenges in federal district court to the facial constitutionality of a statute, even if related to a prior state case, if the request for relief is prospective.[10] Pl.'s Mem. Law at 4, 14. However, if Plaintiff's claim is inextricably intertwined with the Commonwealth Court's decision on her constitutional challenge, *Rooker–Feldman* bars this Court from taking up any aspect

---

9. At oral argument on this Motion, Plaintiff's counsel would not concede waiver but did admit that the federal constitutional claim was not specifically presented or was not artfully presented in state court.

10. A comprehensive survey of the *Rooker–Feldman* doctrine appeared in the May 1999 *Notre Dame Law Review*. The conclusion of the lead article supports the conclusion in this case. Professor Suzanna Sherry, despite criticizing the doctrine in many of its applications, concluded that the ultimate test is "whether the federal plaintiff would have standing to challenge the general rules, even though the particular state judgment against him will stand .... the standing analysis ... will turn on whether the plaintiff can show that he is likely to be subject to the challenged rule again." Suzanna Sherry, *Judicial Federalism in the Trenches: The Rooker–Feldman*

*Doctrine Inaction,* 74 Notre Dame L.Rev. 1085, 1110 (1999).

Distinguishing the bar admissions/disciplinary cases such as *Feldman* itself, Professor Sherry's test precludes this plaintiff from being able to press her claim for prospective relief only because she would not have standing, i.e., she has already been turned down in the state court for her worker's compensation claim and would have no personal standing to bear the standard of the alleged class in seeking to have this rule overturned. However, in order to approach the issue of standing, this Court must have subject matter jurisdiction. "In the federal system, standing and subject-matter jurisdiction are both threshold questions. Ordinarily, a negative finding on one of these issues will render discussion of the other unnecessary." *International Tel. & Tel. Corp. v. Alexander,* 396 F.Supp. 1150, 1168 (D.Del.1975).

of the claim. As previously discussed, a federal claim is inextricably intertwined with a prior state adjudication if the relief requested in the federal action would "effectively void the state court's ruling[.]" *Gulla*, 146 F.3d at 171. The matters are inextricably intertwined "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview*, 225 F.3d at 325 (citations omitted). Additionally, "[a] federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court." *FOCUS*, 75 F.3d at 840.

Plaintiff's Complaint requests that this Court declare Section 415 unconstitutional and "order and direct defendants to grant plaintiff and all class members a new hearing and the opportunity to oppose the assignment of a new Workers' Compensation Judge." Pl.'s Compl. ¶ 28(d). Such a finding would be inextricably intertwined with the state court's holding as it could "only be predicated upon a conviction that the state court was wrong[,]" *Parkview*, 225 F.3d at 325 (citations omitted), in direct contravention of *Rooker–Feldman*. If this Court were to invalidate Section 415, it would be impossible to reconcile that decision with the Commonwealth Court's upholding of the statute. Further, granting Plaintiff a new hearing would completely fly in the face of the Commonwealth Court's conclusion, after two appeals, that no new hearing was warranted. Plaintiff's claim clearly is inextricably intertwined with the Commonwealth Court's decision upholding the constitutionality of the statute as applied to Plaintiff. Any finding by this Court in Plaintiff's favor, whether in the form of prospective relief or the granting of a new hearing, would reverse the final state court judgment against Plaintiff in contravention of *Rooker–Feldman*.

### 3. Plaintiff's General Challenge

Plaintiff argues that her general challenge to the statute does not run afoul of *Rooker*–Feldman because the Commonwealth Court did not make a judgment about the facial constitutionality of Section 415, and she cites to *Feldman* in support of that proposition. Pl.'s Mem. Law at 12–14. Plaintiff quotes from *Feldman* that district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state court judgment in a particular case." *Id.* at 13 (quoting *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303). However, excluded from Plaintiff's discussion is the next sentence from *Feldman*, which states that "[district courts] do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the U.S. Supreme] Court." *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303. The Commonwealth Court made such a decision when it held that Section 415 was constitutional as applied to Plaintiff. A finding by this Court that the statute itself was unconstitutional would effectively nullify the Commonwealth Court's judgment, and that we are not empowered to do.

In *Stern v. Nix*, 840 F.2d 208, 211 (3d Cir.1988), the Third Circuit distinguished between general and particular challenges for *Rooker*–Feldman purposes with regard to an attorney's challenge to the Pennsylvania Supreme Court's decision to disbar him. Acknowledging that the line between a "general challenge" and a challenge to a state court decision in a "particular case" "is often difficult to draw[,]" the Court noted that if the plaintiff's request to enjoin the state court's judgment were granted, "the federal court would effectively

reverse the state court judgment, and thus 'review [a] final judgment[ ] of a state court in judicial proceedings', contrary to *Rooker*–Feldman." *Id.* at 212. *Stern* can be distinguished from *Feldman* itself, which explained that challenging the validity of a state bar admission rule would "not require review of a judicial decision in a particular case[,]" whereas seeking review in a federal district court of a state court's final judgment in a bar admission matter would run afoul of *Rooker*–Feldman. *Feldman*, 460 U.S. at 487, 103 S.Ct. 1303.

### 4. *Waiver of Constitutional Challenge*

Further, by not raising her constitutional challenge to Section 415 in her first appeal to the Commonwealth Court, Plaintiff waived that claim. As the Supreme Court noted in *Feldman:*

> "Moreover, the fact that we may not have jurisdiction to review a state court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court action in any federal court."

*Id.* at 483 n. 16, 103 S.Ct. 1303. The Commonwealth Court refused to address Plaintiff's facial challenge precisely because Plaintiff failed to raise that claim in her first appeal and the court found the issue was waived. In its alternative holding, however, the Commonwealth Court rejected Plaintiff's constitutional challenge as applied to her. In light of Plaintiff's waiver and the inextricable intertwining of her federal claims with the state court's decision, the application of the *Rooker*–Feldman doctrine is warranted.[11]

---

**11.** Much of the literature discussing *Rooker*–Feldman criticizes it as duplicative of the abstention doctrines of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and preclusion doctrines, but even here, this analysis would not save this plaintiff's case. Although the Court's decision is fully supported, if not mandated, by authoritative precedent, even the literature criticizing *Rooker*–Feldman would agree with the result in this case. As noted by Barry Friedman and James E. Gaylord in the *Notre Dame Law Review* symposium, *Rooker*–Feldman operates to "to plug any gap in the *Younger* and preclusion doctrines when a party who could have chosen to litigate in federal court instead chooses state court and then in the course of litigation becomes unhappy with that decision." Barry Friedman & James E. Gaylord, *Rooker–Feldman, From the Ground Up*, 74 Notre Dame L.Rev. 1129, 1174 (1999). That fairly accurately describes what happened to this plaintiff; when she lost the first case in the Commonwealth Court, although she continued to litigate in state court, she initiated this case.

Turning also to the analogy of the abstention doctrine to *Rooker*–Feldman, Professor Jack M. Beermann in the *Notre Dame Law Review* symposium criticizes the *Rooker*–Feldman doctrine severely, but does nonetheless agree that it can claim jurisdictional status "only in the very narrow situations in which litigants ask the federal courts to rehear issues identical to those on which they have already obtained state court decisions or, in other words, those situations in which an appeal would lie." Jack M. Beermann, Comment, *Comments on Rooker–Feldman or Let State Law Be Our Guide*, 74 Notre Dame L.Rev. 1209, 1231 (1999) (quoting Susan Bandes, *The Rooker–Feldman Doctrine: Evaluating its Jurisdictional Status*, 74 Notre Dame L.Rev. 1175, 1179 (1999)). Once again, even this limited agreement with *Rooker–Feldman* would apply to bar this plaintiff from proceeding in this court.

Many of the articles in the *Notre Dame Law Review* symposium describe the overlap between *Rooker*–Feldman and res judicata/abstention/preclusion cases; and assert that much of *Rooker–Feldman* application could easily be supplied by standard abstention or preclusion analysis. The problem which this Court sees in that approach is that a federal court must have subject matter jurisdiction in the first place to rule on res judicata, abstention, or preclusion; the dictates of the Supreme Court in both *Rooker–Feldman,* and the opinions of the Third Circuit cited above,

### 5. Class Claims

■ With regard to class claims, in *Stern*, the Court concluded that the plaintiffs' complaint was "simply a skillful attempt to mask the true purpose of the action, which essentially [was] to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of *Rooker–Feldman*." *Stern*, 840 F.2d at 212. The fact that the plaintiff in *Stern*, like Plaintiff here, purported to act on behalf of others similarly situated did "not change the fact that he [was] essentially seeking reversal of his own judgment." *Id.* As this Court does not have subject matter jurisdiction, it is inappropriate (and unnecessary) to embark upon a discussion of the class claims asserted by Plaintiff.

However, this Court briefly addresses Plaintiff's argument that the putative class be allowed to substitute a new representative. Plaintiff relies on *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 124–25 (3d Cir.1985), in which the Third Circuit allowed the intervention of a new class representative after the original representative was disqualified. In *Goodman*, though, the class had already been certified with a representative so subject matter jurisdiction and standing were firmly established. In this case, however, no class has been certified nor is a class certification motion pending before this Court.[12] Because this Court lacks subject matter jurisdiction over this action, and a class has not been certified, this Court can not retain jurisdiction in order to permit substitution of a named plaintiff.

"[W]here a named plaintiff is dismissed from the class action because there is no case or controversy between him and the defendant and where the class itself has not been properly certified in accordance with Rule 23(c), the complaint of the class must be simultaneously dismissed for failure to set forth a case or controversy as required by Article III of the Constitution. *See Board of School Comm'rs v. Jacobs*, 420 U.S. 128, 129, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975)." *Booth v. Prince George's County*, 66 F.R.D. 466, 476 (D.Md.1975).

### 6. Identity of Parties

Finally, Plaintiff asserts that the *Rooker–Feldman* doctrine should not be applied in this case because the parties in the state and federal actions are not identical. *See Valenti v. Mitchell*, 962 F.2d 288, 297 (3d Cir.1992). In *Valenti*, party identity related to the plaintiffs, as it was the plaintiffs in the state action who differed from the plaintiffs in the federal action. The Court held that *Rooker–Feldman* "does not bar

---

instruct this Court that if subject matter jurisdiction does not exist in the first place, abstention or preclusion analysis would be inappropriate and unnecessary. *See Pennzoil v. Texaco*, 481 U.S. 1, 23, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("There is no occasion to decide if abstention would have been proper unless the District Court had jurisdiction."). When HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1503 (David L. Shapiro ed., 4th ed.1996) asks, "What do *Rooker* and *Feldman* add to the doctrine of res judicata ...." the answer may be they add nothing, but they take away jurisdiction, and that may be the only utility, but an appropriate utility, if only to avoid the collision described in the opening paragraph and also to avoid, continuing Jus-

tice Souter's metaphor, deciding which party must yield at this intersection. *See also* the discussion in 18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD C. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1 (2d ed.2002), which describes the *Rooker–Feldman* doctrine as particularly duplicative of res judicata but, nonetheless, recognizes that since virtually all lower federal courts addressing the issue have adopted *Rooker–Feldman* to decline jurisdiction, it serves a specific purpose of precluding the federal court from entering into any kind of other doctrinal analysis.

**12.** On January 6, 2000, the district court denied Plaintiff's Motion for Class Certification without prejudice. *Bass v. Butler*, C.A. No. 98–4112, slip op. (E.D. Pa. Jan 6, 2000).

individual constitutional claims by persons not parties to earlier state court litigation seeking a place on the ballot[.]" *Id.* at 298. Although Defendants in this federal action "appear to differ somewhat from those in the state action[,]" *Bass v. Butler,* 258 F.3d at 179, the issue of privity, as pointed out by Defendants' counsel at oral argument, should be considered from Plaintiff's side and would relate exclusively to the state court holding against Plaintiff being applied against her by the federal district court. When examined this way, the identity of Defendants does not seem that relevant, particularly since Plaintiff, having lost her action in state court, may have been motivated to prevent *Rooker–Feldman* from applying in federal court simply by naming different defendants. Although this Court is not asserting that Plaintiff has been so motivated, even if privity among defendants is necessary, there is some basis to conclude that Defendants in the federal action are in privity with the employer/insurer defendant in state court because they all share the same legal interest in preserving the outcome in state court and the constitutionality of Section 415.

III. *Conclusion*

For the reasons discussed above, the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction. Defendants' Post Remand Motion to Dismiss on Jurisdictional Grounds will be granted.

An appropriate Order follows.

### *ORDER*

AND NOW, this 26th day of September, 2002, upon consideration of Defendants' Post Remand Motion to Dismiss on Jurisdictional Grounds, Plaintiff's Memorandum of Law Sur *Rooker–Feldman,* Claim Preclusion, and Justiciability of Class Claims, and Plaintiff's Memorandum of Law in Opposition to Defendants' Post Remand Mo-

tion to Dismiss on Jurisdictional Grounds, it is hereby

ORDERED that Defendants' Motion is GRANTED, and Judgment is entered in favor of Defendants and against Plaintiff.