

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2003

# Desi Pizza Inc v. Wilkes-Barre

Precedential or Non-Precedential: Precedential

Docket 02-1441

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Desi Pizza Inc v. Wilkes-Barre" (2003). *2003 Decisions.* Paper 694.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/694

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 6, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1441

———————

DESI'S PIZZA, INC.;
DESI'S FAMOUS PIZZA, INC.;
DESI PIZZA WP, INC.;
D.F.P. FRANCHISING, INC.;
FRANCIS DESIDERIO; MARTIN DESIDERIO,

Appellants

v.

CITY OF WILKES-BARRE; THOMAS D. McGROARTY;
ANTHONY J. GEORGE; DAVID W. LUPAS

———————

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(Dist. Court No. 01-cv-00480)
District Court Judge: Richard A. Caputo

———————

Argued on December 16, 2002

Before: NYGAARD, ALITO, and RENDELL, *Circuit Judges.*

(Opinion Filed: March 6, 2003)

HARRY KRESKY (argued)
Law Offices of Harry Kresky
250 West 57th Street, Suite 2017
New York, NY 10107

*Counsel for Appellants*

GEORGE A. REIHNER
JOHN G. DEAN (argued)
Elliott Reihner Siedzikowski &
 Egan, P.C.
400 Spruce St., Suite 300
Scranton, PA 18503

*Counsel for Appellees*
*City of Wilkes-Barre, Thomas D.*
*McGroarty and Anthony George*

SEAN P. MCDONOUGH (argued)
Dougherty, Leventhal & Price, L.L.P.
75 Glenmaura National Blvd.
Moosic, PA 18507

*Counsel for Appellee*
*David W. Lupas*

## OPINION OF THE COURT

*ALITO, Circuit Judge*:

Desi's Pizza, Inc., Desi's Famous Pizza, Inc., Desi's Pizza WP, Inc., D.F.P. Franchising, Inc., Francis Desiderio, and Martin Desiderio (collectively the "plaintiffs") commenced this action against the City of Wilkes-Barre, Pennsylvania, and several city officials. The plaintiffs asserted that the defendants had violated their constitutional rights to due process and equal protection and had violated several federal civil rights statutes. Most but not all of the challenged actions taken by the defendants concerned a bar and restaurant known as Desi's Pizza, which was found by a state court to be a common nuisance and was closed down by the state court for a year. The District Court dismissed the plaintiffs' complaint under the *Rooker-Feldman* doctrine, holding that the plaintiffs' federal claims were inextricably intertwined with the state court decision. We hold that the *Rooker-Feldman* doctrine does not bar the plaintiffs' equal protection claim, their federal statutory discrimination claims, and their substantive due process claim. We also conclude that we cannot determine from the face of the complaint whether the plaintiffs' procedural due

process claim is inextricably intertwined with the state court decision, and we therefore vacate the order dismissing that claim and remand for the plaintiffs to set out the claim with sufficient detail to enable the District Court to determine whether it is inextricably intertwined with the state court decision.

## I.

In reviewing a District Court's decision to dismiss a complaint, we assume the truth of the facts alleged in the plaintiff's complaint. *Liberty Lincoln-Mercury v. Ford Co.,* 134 F.3d 557, 571 n.18 (3d Cir. 1998). Accordingly, we will summarize the facts alleged in the complaint. Needless to say, in recounting these allegations, we express no view on whether they are well-founded.

Desi's Pizza, Inc., Desi's Famous Pizza, Inc., Desi's Pizza WP, Inc., and D.F.P. Franchising, Inc. are all corporations organized under the laws of Pennsylvania, and Francis and Martin Desiderio are officers, directors, and principals of all of these corporations. Between some time in 1989 and March 12, 2001, Desi's Pizza, Inc. operated Desi's Pizza ("Desi's") in Wilkes-Barre.

Between the opening of the Restaurant and March of 2000, the customers patronizing Desi's were predominantly white. At some time in March of 2000, the City of Wilkes-Barre, its mayor (Thomas D. McGroarty) and chief of police (Anthony J. George), and David W. Lupas, the District Attorney of Luzerne County, Pennsylvania (collectively the "defendants"), acted in concert to bring about the closure of another bar and restaurant called Chu's. Chu's clientele consisted primarily of African-Americans and Latinos. After Chu's closed, many of its former patrons became regular customers of Desi's.

The residents of Wilkes-Barre are predominantly white. Following the closure of Chu's and the change in the ethnic composition of Desi's' clientele, people living in the area surrounding Desi's began to complain to the defendants about problems allegedly created by Desi's. Residents complained that Desi's' presence increased "crime, noise[,] and other disturbances." App. at 39. These complaints,

however, were in fact motivated by a desire to drive African-Americans and Latinos out of Wilkes-Barre, and the defendants shared this objective. This desire and "public criticism" of the defendants for failing "to provide adequate policing and law enforcement" in the city motivated the defendants to "embark[] on a campaign to close down" Desi's. *Id.*

In furtherance of this campaign, the defendants took many actions that were adverse to the plaintiffs. These actions included filing a petition with the Pennsylvania Liquor Control Board ("Board") asking the Board to decline to renew Desi's' liquor license; instructing Wilkes-Barre police officers to "regularly and conspicuously park outside" Desi's; asking police officers in nearby Dallas, Pennsylvania, to harass employees and customers of another restaurant operated by the Desiderios; seeking an order from a state court closing down Desi's as a public nuisance; knowingly making false and disparaging public statements about the plaintiffs; and "block[ing] efforts" by the Desiderios to "obtain a permit to open another bar and restaurant in Wilkes-Barre on spurious grounds." *Id.* at 39-41, 43-45. Although the defendants claimed that their efforts to close down Desi's were motivated solely by the occurrence of criminal activity in and around Desi's, the defendants made no negative statements concerning and took no action against two other bars in Wilkes-Barre where violent altercations occurred in 2000 and 2001.

As noted above, the defendants' actions against Desi's included the filing of a complaint in a Pennsylvania state court seeking an order enjoining the operation of Desi's on the ground that it constituted a public nuisance. This state proceeding is critical to the instant appeal, and we will thus describe it in some detail.

On about March 12, 2001, Lupas filed an action in the Luzerne County Court of Common Pleas (the "state court") pursuant to 47 P.S. § 6-611(b), seeking an order enjoining Desi's' operation for one year on the ground that it constituted a "common nuisance" under 47 P.S. § 6-611(a). On the same date and without conducting a hearing, the state court granted a preliminary injunction closing Desi's. The state court did not give the plaintiffs the opportunity to

present testimony concerning the propriety of the preliminary injunction until a week after the injunction was issued.

On March 16, 2001, the plaintiffs filed an answer to Lupas's complaint in the state court. On the morning of March 19, 2001, the plaintiffs filed an amended answer in the state court and initiated the present action in the District Court. In pertinent part, the plaintiffs' amended answer in the state proceeding stated that they "reserve[d] the right" to have certain federal claims "adjudicated in the United States District Court for the Middle District of Pennsylvania" pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). App. at 108. Specifically, the plaintiffs reserved the right to file a federal action asserting claims against the defendants under 42 U.S.C. §§ 1981, 1982, 1983 and 1985, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The plaintiffs further stated that they did not wish to have their federal claims adjudicated by the state court, and that they were describing their federal claims to the state court only so that the state court could "construe the state law issues 'in light of' the federal claim [sic] as required by *Government Employees v. Windsor*, 353 U.S. 365 (1957)." App. at 108.

Later in the day on March 19, the state court commenced hearings on the question whether an order closing Desi's was proper. The state court heard testimony concerning this issue on March 19, 21, and 22, 2001. On March 28, 2001, the state court entered an order enjoining the operation of Desi's between the dates of March 12, 2001, and March 12, 2002. *Id.* at 77. In an opinion accompanying its order, the state court made three findings that are pertinent to this appeal. First, the state court found that extensive criminal activity had taken place in and around Desi's and that there was a "clear, direct and definitive causal connection between" the operation of Desi's and such criminal activity. *Id.* at 71. Second, the state court found that Francis Desiderio was aware of this criminal activity but made little or no attempt to prevent it. Finally, the state court found that the defendants' attempt to enjoin the operation of Desi's was proper under Pennsylvania law and made the following comments:

> For law enforcement officials not to have acted, given the number and nature of the complaints [against Desi's], would not only have been an abdication of their responsibility to investigate criminal conduct and enforce the law, but also an abandonment of the citizens whose safety and welfare they are bound to protect.

> In conclusion, this Court is firmly of the Opinion that the conduct endured by the neighbors of [Desi's] . . . is precisely the type of conduct our legislature intended to curb when it authored Section 611 of the Liquor Code. In no uncertain terms, [Desi's] . . . is the archetypal nuisance bar. If the conduct and manner of operation of [Desi's] does not qualify as a nuisance bar, then that concept is meaningless in Pennsylvania.

*Id.* at 76-77. The state court made no reference to the plaintiffs' federal claims in its opinion. It should be noted that the state court's injunction has since expired and that Desi's has resumed operation, albeit without a liquor license.

The plaintiffs' complaint in the instant action contains four counts. First, the complaint avers that the defendants' act of "singling out [the plaintiffs'] establishments" and "treating them in a far harsher manner than other businesses" violated the Equal Protection Clause. App. at 46. Second, the complaint claims that "inasmuch as defendants['] actions were done in retaliation for welcoming African-Americans and Latinos as patrons at their establishments and were done as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities," the defendants' actions violated 42 U.S.C. §§ 1981, 1982, and 1985 and the Fourteenth Amendment. *Id.* Third, the complaint maintains that the defendants violated the plaintiffs' due process rights under the Fifth and Fourteenth Amendments. The complaint alleges that the defendants (a) "perverted and abused the police powers invested in them for the purpose of destroying plaintiffs and their businesses without legally valid justification"; (b) "acted so as to stigmatize and harass plaintiffs without any lawful basis and without due regard to the truth of statements made about plaintiffs"; and (c)

"acted to wrongfully deprive plaintiffs of the use of their property and the right to pursue legitimate commercial endeavors." *Id.* at 46-47. Finally, the complaint asserts state-law claims of abuse of process, tortious interference with business relationships, trade disparagement, and defamation. The complaint seeks compensatory and punitive damages and requests an injunction preventing the defendants from engaging in "further efforts to harass, disparage and destroy [the plaintiffs'] businesses and directing [the defendants] to allow Desi's Pizza to continue operating." *Id.* at 47.

The defendants moved for partial dismissal of the complaint under Fed. R. Civ. P. 12(b)(6), and the District Court responded by dismissing the complaint in its entirety based on the *Rooker-Feldman* doctrine ("*Rooker-Feldman*"). The *Rooker-Feldman* doctrine, which derives its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "preclude[s] lower federal court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts." *Parkview Assocs. Pshp. v. City of Leb.*, 225 F.3d 321, 325 (3d Cir. 2000) (*quoting Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir. 1998)).

In an opinion accompanying its order dismissing the complaint, the District Court stated that each issue raised by the plaintiffs was "intertwined with the issues in the state court action." App. at 11. The District Court held that dismissal of the first count of the complaint, which alleges an equal protection violation, was warranted because the state court, in finding that "Desi's Pizza was, unequivocally, a nuisance bar," had necessarily determined that the defendants' "conduct was unrelated to retaliation or [to Desi's] minority clientele." *Id.* Similarly, the District Court dismissed the second count of the complaint on the ground that "[i]n order to determine that [the defendants] were retaliating against [the plaintiffs] for serving minorities," the District Court "would first have to determine that" the state court "was incorrect in [its] determination that [the defendants'] actions were lawful dealings with a nuisance bar." *Id.* at 12.

The District Court treated the third count of the plaintiffs' complaint as alleging violations of the plaintiffs' Fourteenth Amendment rights to both procedural and substantive due process. The District Court held that the *Rooker-Feldman* doctrine barred the procedural due process component of that count for two reasons. First, the District Court reasoned as follows. In order to be protected by the guarantee of procedural due process, the plaintiffs had to have a property right under state law to continue to operate Desi's. However, the state court's determination that the continued operation of Desi's was illegal under the state liquor laws meant that the plaintiffs had no right to continue to operate Desi's under Pennsylvania law. Therefore, the plaintiffs' procedural due process claim was inextricably intertwined with the prior state court decision in the nuisance proceeding. App. at 14.

Second, the District Court held that "[e]ven accepting Plaintiffs' allegations as true, Plaintiffs were given a post-deprivation hearing and opportunity to be heard." App. at 13. Presumably, the District Court meant that despite the fact that the state court initially ordered the closure of Desi's without allowing the plaintiffs to present testimony, the state court held extensive hearings a week later.

As to the plaintiffs' substantive due process theory, the District Court noted the plaintiffs' contention that governmental "actions which adversely affect a plaintiff's property interests give rise to a substantive due process claim if the defendants are motivated by illegitimate objectives." App. at 14. The Court reasoned that the state court had implicitly found that the defendants were not motivated by illegitimate objectives when the court determined that "Desi's Pizza was a nuisance bar." *Id.*

The plaintiffs appealed the District Court's dismissal of their complaint. The plaintiffs also filed a motion in the District Court pursuant to Fed. R. Civ. P. 59(e) requesting that the District Court reconsider its decision. In their motion for reconsideration, the plaintiffs informed the District Court that in the course of the state court proceedings, they had reserved the right to have their federal claims adjudicated by the District Court pursuant to *England.*

The District Court denied the plaintiffs' motion for reconsideration on two grounds. First, the District Court reasoned that a litigant may make an "*England* reservation" only where a District Court has previously abstained from hearing that litigant's federal claims. Since no District Court had so abstained, the District Court concluded, no *England* reservation was available. Second, the District Court stated that even if abstention by a federal court is not a prerequisite to the availability of an *England* reservation, a defendant in a state court proceeding "may invoke *England* . . . only if the case is removable." App. at 25. In the present case, the District Court wrote, the state-court complaint did "not concern a federal question, but simply the question of whether" Desi's "constituted a nuisance," which was solely a question of Pennsylvania law. *Id.* Hence, the District Court concluded, the plaintiffs could not have removed the state-court action, and their attempted *England* reservation was invalid.

On appeal, the plaintiffs make two contentions. First, they argue that the District Court erred in holding that the *England* reservation was not effective. Since a proper *England* reservation protects a federal action from dismissal under the *Rooker-Feldman* doctrine, *see Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir. 1991), the plaintiffs maintain that the District Court's judgment should be reversed. Second, the plaintiffs claim that even if their *England* reservation was ineffective, the District Court erred in finding that their federal claims were "inextricably intertwined" with the issues resolved by the state court. As we explain below, we agree with the plaintiffs' second argument and consequently do not reach the question whether the *England* reservation was proper.

## II.

The *Rooker-Feldman* doctrine is based on "the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview*, 225 F.3d at 324. Under 28 U.S.C. § 1257, the Supreme Court has jurisdiction to review a decision by "the highest court of a State in which a decision [may] be had." Since

Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions. *Feldman*, 460 U.S. at 476; *Gulla*, 146 F.3d at 171. To ensure that Congress's intent to prevent "the lower federal courts" from "sit[ting] in direct review of the decisions of a state tribunal" is given effect, *Gulla*, 146 F.3d at 171, the *Rooker-Feldman* doctrine prohibits District Courts from adjudicating actions in which "the relief requested . . . requires determining that the state court's decision is wrong or . . . void[ing] the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996).

As noted above, a claim is barred by *Rooker-Feldman* under two circumstances: first, if the claim was "actually litigated" in state court prior to the filing of the federal action or, second, if the claim is "inextricably intertwined with [the] state adjudication," meaning that "federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview*, 225 F.3d at 325 (internal quotation marks omitted). A finding that *Rooker-Feldman* bars a litigant's federal claims divests a District Court of subject matter jurisdiction over those claims. *Guarino v. Larsen*, 11 F.3d 1151, 1156-57 (3d Cir. 1993). Our review of the District Court's determination regarding its own subject matter jurisdiction is plenary. *Gulla*, 146 F.3d at 171.

### III.

The defendants do not claim that the plaintiffs "actually litigated" their federal claims before the state court for the purposes of the *Rooker-Feldman* doctrine. However, we are required to inquire on our own motion whether the District Court possessed subject matter jurisdiction over the present case. *Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002) ("[T]his Court has a continuing obligation to sua sponte raise the issue of subject matter jurisdiction when it is in question."); *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion.") (*quoting Insurance Corp. of Ireland, Ltd. v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Hence, we will briefly discuss the question whether the plaintiffs "actually litigated" their federal claims in the state court for *Rooker-Feldman* purposes.

Our recent decision in *Parkview* describes the factors to be considered in determining whether an issue was "actually litigated" in a state court proceeding. In *Parkview*, the plaintiff applied to a city zoning officer for a permit to convert a "nursing home and personal care facility" into a structure functioning solely as a "personal care facility." *Parkview*, 225 F.3d at 322. The zoning officer granted the requested permit, but residents of the city objected and appealed to the city's Zoning Hearing Board. The Board reversed the zoning officer's determination, finding that the plaintiff's "proposed use would change the essential character of the prior use and would increase non-conformity." *Id.* The plaintiff then appealed the Board's decision to the Court of Common Pleas of Lebanon County, Pennsylvania. Under Pennsylvania law, the state court's review of the Board's decision was confined to the question whether substantial evidence supported the Board's determination that the proposed use would "increase non-conformity." *Id.* at 326. The plaintiff did not argue any issues of federal law in its brief to the state court, and the state court's opinion made no statements regarding any issues of federal law.

The state court affirmed the Board's decision, and the plaintiff subsequently filed an action in federal court claiming that the city had denied the plaintiff's request for a permit in order to exclude disabled persons from the city in violation of, inter alia, the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. The city claimed that the federal action was barred by *Rooker-Feldman* because the proceeding before the state court amounted to an "actual litigation" of the plaintiff's federal claims. We held, on two grounds, that the plaintiff had not "actually litigated" its federal statutory claims before the state court. First, the plaintiff had "not present[ed] its disability-based discrimination claims to the state courts on appeal from the Board's decision[ ]." *Id.* at 325. Second, the state court's "opinions reveal[ed] that" the

court had affirmed the Board's decision "without deciding whether [it] . . . violated federal or state anti-discrimination laws." *Id.* at 325-26.

Applying our holding in *Parkview* to the present case, we hold, for two reasons, that the plaintiffs did not actually litigate their federal claims in the state court proceeding. First, the plaintiffs made no reference to their federal claims in the answer they filed in the state court proceeding beyond the statement that they reserved the right to file their federal claims in the District Court, and we have found nothing in the record that suggests that the plaintiffs made arguments or presented evidence to the state court concerning the validity of their federal claims. Second, the state court's opinion contains no discussion of any issues of federal law. As noted above, the state court confined its discussion to the question whether Desi's constituted a "common nuisance" under Pennsylvania law. For these reasons, it is clear that the plaintiffs did not "actually litigate" their federal claims in the District Court within the meaning of the *Rooker-Feldman* doctrine.

## IV.

A plaintiff's claim for relief in a federal action is "inextricably intertwined" with an issue adjudicated by a state court under two circumstances: (1) "when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered" and (2) when "the federal court must . . . take action that would render [the state court's] judgment ineffectual." *FOCUS*, 75 F.3d at 840.

## A.

In the first circumstance discussed above, *Rooker-Feldman* bars the plaintiff's federal claim because granting the plaintiff relief would require the federal court to conclude that the State Court made an incorrect factual or legal determination. In cases falling into this category, "federal relief can only be predicated upon a conviction that the state court was wrong." *Centifanti v. Nix*, 865 F.2d

1422, 1430 (3d Cir. 1989) (*quoting Pennzoil Co. v. Texaco, Inc.*, 418 U.S. 1, 25 (1987) (Marshall, J., concurring)).

In determining whether a federal decision favorable to the plaintiffs would mean that a prior state-court judgment was wrong, it is necessary to identify the pillars on which the state-court judgment rests. To do this, we consider the questions of state law that the state court was obligated to reach in order to render its decision. Our decision in *Ernst v. Child & Youth Services*, 108 F.3d 486 (3d Cir. 1997), illustrates this process. In that case, a state child welfare agency filed suit in state court against the grandmother of a child, seeking to deprive the grandmother of custody and to have the child placed in foster care. The state court held that the child was "dependent" under Pennsylvania law, meaning that the child was "without proper parental care or control," and further determined that foster care would be in "the best interests of the child." *Ernst*, 108 F.3d at 492. The grandmother subsequently brought suit against the child welfare agency in federal court, claiming that the agency had violated her right to substantive due process by seeking the termination of her custody out of "malice or personal bias." *Id.* The child welfare agency argued that the *Rooker-Feldman* doctrine divested the District Court of jurisdiction. The agency maintained that, in holding that the child was "dependent" and in need of foster care, the state court had necessarily determined that the defendant's state court suit was not based on an improper motive.

We rejected the agency's *Rooker-Feldman* argument, reasoning that under Pennsylvania law "[n]either an adjudication of dependency nor a determination of the appropriate disposition of a dependent child is based on the intentions or states of mind of the party seeking the dependency determination." *Id.* Accordingly, a determination that the agency sought to terminate the grandmother's custody of the child with an improper motive would not necessarily imply that the state court had erred in determining that the child was dependent under Pennsylvania law. *See also Parkview*, 225 F.3d at 326 (holding that because Pennsylvania law limited a state court's review of a zoning board's decision to the issue whether the board's determinations were supported by

substantial evidence, the *Rooker-Feldman* doctrine did not prevent the plaintiffs from filing a federal action claiming that the zoning board had engaged in disability discrimination following a state court's review of the board's determinations); *Gulla*, 146 F.3d at 172 (holding that a state court's determination that the plaintiff landowners lacked standing to challenge a township's approval of a subdivision did not bar the plaintiffs from later asserting due process, equal protection, and Just Compensation Clause claims in federal court, because "[u]nder Pennsylvania law, the [state] court could not resolve the merits of the Gullas' [constitutional] claims if they lack standing to bring their suit"); *FOCUS*, 75 F.3d at 842 (holding that an order issued by the Pennsylvania Supreme Court in which it refused to exercise its "King's Bench" jurisdiction to overturn gag orders issued by a lower state court did not implicitly reject the plaintiffs' claim that the gag orders violated the First Amendment, as Pennsylvania law authorized the Pennsylvania Supreme Court to decline to exercise its King's Bench jurisdiction where the case did not present an issue of "immediate public importance"); *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1992) (holding that *Rooker-Feldman* did not bar the plaintiff's federal action where a Pennsylvania state court had previously dismissed the plaintiff's petition for review of an agency's decision for failure to comply with the Pennsylvania Rules of Appellate Procedure, since the extent of the plaintiff's compliance with those rules had no bearing on the merits of the plaintiff's constitutional claims).

## B.

In the second situation discussed above, the plaintiff's federal claim is precluded because the relief sought would undo or prevent the enforcement of the state court's order. For instance, in *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988), the Supreme Court of Pennsylvania had issued an order revoking the plaintiff's license to practice law. The plaintiff sued the Justices of the Pennsylvania Supreme Court, seeking a "declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania

from disbarring [the plaintiff] and other similarly situated attorneys unless the Supreme Court . . . first grant[ed] an evidentiary hearing to the attorney" in question. *Stern*, 840 F.2d at 212. We held that *Rooker-Feldman* prevented the plaintiff from obtaining an injunction against his disbarment, reasoning that "any attempt to enjoin the enforcement of a state court judgment . . . is suspect. If [the proposed injunction were] granted[,] the federal court would effectively reverse the state court judgment, and thus 'review [a] final judgment[ ] of a state court in judicial proceedings,' contrary to *Rooker-Feldman*." *Id.*; *cf. Centifanti*, 865 F.2d at 1429-30 (holding that a plaintiff's suit in federal court, which sought an injunction against future denials of petitions for readmission to the Pennsylvania bar without certain procedural safeguards, was not barred by *Rooker-Feldman* because it sought only prospective relief and thus would not prevent the enforcement of the Pennsylvania Supreme Court's order denying the plaintiff's petition for readmission). Thus, *Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.

## V.

### A.

Applying the above framework to the instant case, we turn to the question whether a decision in the plaintiffs' favor on their federal claims would mean that the judgment of the state court in the nuisance action was wrong. The defendants point to the state court's finding that Desi's was a "common nuisance" under Pennsylvania law and the state court's statement that the defendants would have "abdicated" their responsibilities as law enforcement officials if they had failed to seek the closure of Desi's. The defendants argue that affording the plaintiffs relief on their federal claims would necessarily overturn these aspects of the state court decision. We disagree.

First, the defendants' argument overlooks the fact that the plaintiffs' claims are not based solely on the defendants'

alleged actions against Desi's, but encompass alleged harassment impacting the Desiderios' other businesses as well. As noted above, the plaintiffs' complaint alleges that the defendants, among other things, instructed police officers in Dallas, Pennsylvania, to harass the employees and customers of another establishment operated by the Desiderios and prevented the Desiderios from opening another establishment in Wilkes-Barre. App. at 39-44. The state court findings on which the defendants rely relate exclusively to Desi's Pizza. It is therefore apparent that the plaintiffs' federal claims, insofar as they relate to the Dallas restaurant and the second Wilkes-Barre restaurant, are not inextricably intertwined with the state court's judgment.

Second and more important, a decision in the plaintiffs' favor on their federal equal protection and statutory discrimination claims would not mean that the state court erred in finding that Desi's was a common nuisance or in commenting about the defendants' obligation to take action against Desi's. This is so because the state court's finding that Desi's was a "common nuisance" under Pennsylvania law does not mean that a "campaign of harassment" against that establishment, such as the one allegedly waged by the defendants, would comport with the Equal Protection Clause or with 42 U.S.C. §§ 1981 and 1982.[1]

---

1. As noted above, the Complaint also requested relief pursuant to 42 U.S.C. §§ 1983 and 1985. We need not independently address the question whether the plaintiffs have stated a claim under either of the above provisions, because that inquiry turns on whether the defendants violated some other federal constitutional or statutory provision. It is well established that the success of a Section 1983 claim is dependent on the plaintiff's ability to state a cause of action under some other federal constitutional or statutory provision. *See, e.g.*, *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992) ("Although [Section 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law.").

As to the plaintiffs' 42 U.S.C. § 1985 claim, we assume at the outset that the plaintiffs are alleging that the defendants' conduct violated Section 1985(3). Although the plaintiffs do not specify which subsection they believe the defendants to have violated, Sections 1985(1) and 1985(2) clearly do not pertain to the present case. Section 1985(1)

As noted above, the state court held that Desi's constituted a "common nuisance" under 47 P.S. § 6-611(a). In pertinent part, that statute reads as follows:

> Any room, house, building, boat, vehicle, structure or place . . . where alcohol . . . [is] sold, . . . in violation of this act, and all such liquids, beverages and property kept or used in maintaining the same, are hereby declared to be common nuisances . . . .

47 P.S. § 6-611(a). Thus, in holding that Desi's was a "common nuisance" under Pennsylvania law, the state court necessarily determined that Desi's was an establishment where alcohol was sold "in violation of this act." An establishment sells alcoholic beverages "in violation of this act" within the meaning of Section 6-611(a) where the establishment sells alcohol in violation of one or more provisions of the Pennsylvania Liquor Code ("Liquor Code") or the Pennsylvania Crimes Code ("Crimes Code"). *Commonwealth v. Sal-Mar Amusements*, 630 A.2d 1269, 1273 (Pa. Super. 1993) ("We are mindful that a court may consider violations of the crimes code when deciding whether the closure of an establishment is proper" under Section 6-611(a)); *Commonwealth v. J-D 201 Corp.*, 38 Pa. D. & C.3d 279, 286 (Pa. C. Ct. 1983) ("347 Pa. C.S. § 6-611 expressly provides that the district attorney may . . . proceed in a civil action to enjoin those who . . . violate the provisions of the Liquor Code."). Accordingly, in determining that Desi's constituted a "common nuisance," the State Court necessarily held that Desi's had sold alcoholic beverages in violation of the Liquor Code or the Crimes Code. The question before us, therefore, is whether

---

prohibits "two or more persons" from interfering with a federal officer's performance of his duties, 42 U.S.C. § 1985(1), and Section 1985(2) prohibits conspiracies to obstruct justice and to intimidate litigants and witnesses, 42 U.S.C. § 1985(2). The plaintiffs are not federal officers, and they do not allege that the defendants obstructed justice or intimidated them in their capacities as witnesses or litigants. Section 1985(3), however, prohibits conspiracies to deprive persons of certain constitutional rights, and is thus the most likely basis for the plaintiffs' Section 1985(3) claim. 42 U.S.C. § 1985(3); *Spencer v. Casavilla*, 44 F.3d 74, 77 (2d Cir. 1994).

a finding that Desi's violated the Liquor Code or the Crimes Code necessarily implies that the defendants did not violate any of the federal laws on which the plaintiffs rely in their complaint. As we show below with respect to the plaintiffs' equal protection and statutory discrimination claims, the state court's finding carries no such necessary implication.

We will first treat the plaintiffs' claims that the defendants' alleged campaign of harassment violated the Equal Protection Clause and 42 U.S.C. §§ 1981 and 1982, as all of those claims rely on the premise that the defendants' actions were undertaken with a racially discriminatory intent. Second, we will address the plaintiffs' claim that the defendants' acts violated the Due Process Clause of the Fourteenth Amendment.

## B.

It is appropriate to discuss the plaintiffs' Equal Protection and Section 1981 and 1982 claims together because the District Court resolved them in an identical fashion. As noted above, the District Court observed that the plaintiffs' Equal Protection claim and their claims under 42 U.S.C. §§ 1981 and 1982 are all predicated on the allegation that the defendants' various actions against the plaintiffs were motivated by a desire to drive African-Americans and Latinos out of Wilkes-Barre. The District Court dismissed all of the above claims on the ground that the state court's finding that Desi's constituted a common nuisance and its comment that the defendants would have abdicated their responsibilities if they had not attempted to shut down Desi's necessarily mean that the defendants did not seek the closure of Desi's with discriminatory intent. We cannot agree.

As we discussed above, the state court's finding that Desi's was a "common nuisance" means only that Desi's operated in violation of the Liquor Code or the Crimes Code. To adopt the District Court's position, therefore, we would be required to endorse the proposition that the discriminatory enforcement of a state statute cannot constitute a violation of the Equal Protection Clause or 42 U.S.C. §§ 1981 and 1982 if it is clear that the person

against whom the law is enforced actually violated that law. It is well established, however, that selective prosecution may constitute illegal discrimination even if the prosecution is otherwise warranted.[2] *See, e.g., Wayte v. United States*, 470 U.S. 598, 608 (1985) ("[A]lthough prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.") (*quoting United States v. Batchelder*, 442 U.S. 114, 125 (1979)); *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) ("A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive."); *United States v. Berrigan*, 482 F.2d 171, 174 (3d Cir. 1973) ("[A]lthough the government is permitted 'the conscious exercise of some selectivity' in the enforcement of its criminal laws, any 'systematic discrimination' in enforcement, or 'unjust and illegal discrimination between persons in similar circumstances,' violates the equal protection clause and renders the prosecution invalid.") (internal citations omitted). Although the cases cited above pertain to the Equal Protection Clause, their reasoning is equally applicable to the plaintiffs' statutory discrimination claims. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (stating that in order to state a claim under either 42 U.S.C. § 1981 or 42 U.S.C. § 1982, a plaintiff must show that the defendant acted with discriminatory intent). Thus, without violating *Rooker-Feldman*, the plaintiffs' Equal Protection and Section 1981 and 1982 claims may proceed on the theory that, although there were numerous establishments in Wilkes-Barre that clearly constituted common nuisances under Pennsylvania law, the defendants targeted Desi's with the intent to drive certain ethnic groups out of the city.[3] App. at 46.

---

2. As noted above, the plaintiffs' complaint proceeds on a theory of selective prosecution. The complaint specifically alleges that Desi's was treated in a "far harsher manner than other businesses similarly situated." App. at 46.

3. We stress that we hold only that these claims are not barred by *Rooker-Feldman*. We have not considered any other arguments that may be made regarding these claims.

The defendants stress the state court's determination that they would have "abdicat[ed] . . . their responsibility to investigate criminal conduct and enforce the law" if they had failed to seek the closure of Desi's, App. at 76, but we do not see how this speaks to their motive or why this statement necessarily means that the defendants did not discriminate against the plaintiffs. We may assume that Desi's' violations of the Liquor Code and the Crimes Code were so obvious and flagrant that Wilkes-Barre law enforcement officials would have been derelict in their duties if they had failed to shut down Desi's. The theory of the plaintiffs' Equal Protection and statutory discrimination claims, however, is that *other* establishments possessing liquor licenses in Wilkes-Barre had committed equally serious and obvious violations of the Liquor Code and/or the Crimes Code, and that the defendants overlooked those violations because of the ethnic composition of those establishments' clientele.[4] Hence, it does not follow from the

---

4. The defendants contend that the complaint did not predicate the plaintiffs' Equal Protection claim on the theory that, although Desi's may have been a "common nuisance" under Section 6-611(a), the defendants did not target other establishments that also constituted common nuisances. Rather, the defendants maintain, the plaintiffs initially proceeded on the theory that Desi's was not a common nuisance, but the defendants treated Desi's as such with the purpose of driving African-Americans and Latinos out of Wilkes-Barre. Hence, the defendants argue, the plaintiffs have waived their right to argue the former theory. In support of this argument, the defendants point out that the plaintiffs' complaint states that the "crime, noise and other disturbances" that occurred in and around Desi's in 2000 and 2001 were "not unusual for a restaurant and bar." App. at 39.

We disagree with the defendants' contention. In their complaint, the plaintiffs alleged that the defendants' act of "singling out" Desi's and "treating [it] in a far harsher manner than other businesses similarly situated violated plaintiffs' right to equal protection." App. at 46. This statement can be interpreted as alleging that the defendants treated Desi's in a harsher manner than other nuisance bars. The plaintiffs' allegations regarding the commonality of the incidents in and around Desi's are not inconsistent with the above statement. It may be the case that many establishments in Wilkes-Barre constituted "common nuisances" under Pennsylvania law at all times relevant to the complaint, but the defendants chose to focus solely on Desi's.

state court's determination that Desi's was a flagrant nuisance that the defendants did not act against the plaintiffs with improper motives.

For these reasons, we hold that the plaintiffs' Equal Protection and 42 U.S.C. §§ 1981 and 1982 claims are not "inextricably intertwined" with the state court's judgment for the purposes of *Rooker-Feldman*.

C.

We next discuss the relationship between the state court's determination that Desi's was a common nuisance and the plaintiffs' procedural and substantive due process claims.[5] We find that the complaint does not set out the procedural due process claim with sufficient particularity to permit us to decide whether it is barred by *Rooker-Feldman*. As to the substantive due process claim, we hold that dismissal based on *Rooker-Feldman* was not correct.

***Procedural due process***. In order to determine whether a judgment in the plaintiffs' favor on their procedural due process claims would be inconsistent with the state court judgment, we must know (a) the property interests that figure in those claims and (b) the procedures that the plaintiffs claim were due but not provided. The complaint is far from clear on either of these points, at least with respect to some claims that the complaint may assert. Before we decide whether the plaintiffs' procedural due process claims are barred by *Rooker-Feldman*, we believe that the plaintiffs should be required to spell out those claims. As a result, we do not decide in this appeal whether *Rooker-Feldman* dooms the plaintiffs' procedural due process claims. *See Rivers v. McLeod*, 252 F.3d 99, 102 (2d Cir. 2002) (vacating a District Court's order dismissing the plaintiff's complaint based on the *Rooker-Feldman* doctrine and remanding for

---

5. Because the District Court interpreted the complaint as asserting both procedural and substantive due process claims, we proceed on the assumption that the complaint made both types of due process claim. The question whether the complaint adequately alleges procedural due process claims, in addition to substantive due process claims, has not been briefed before us, and we do not express any view on that issue at this time.

clarification of the facts underlying the plaintiff's claims for relief).

**Substantive due process**. We next consider the effect of the *Rooker-Feldman* doctrine on the plaintiffs' substantive due process theory. As noted above, the plaintiffs claim that the defendants violated substantive due process by depriving them of the ability to put their property to productive use. To obtain relief under the substantive component of the Due Process Clause for a deprivation of property, a plaintiff must make two showings. First, the plaintiff must "establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000). While the case law concerning which property interests are protected "provides very little guidance," *Homar v. Gilbert*, 89 F.3d 1009, 1021 (3d Cir. 1996), one general principle is clear: "whether a certain property interest" is constitutionally protected "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000); *see also Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) ("[S]ubstantive rights 'created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection . . . because substantive due process rights are created only by the Constitution.'") (*quoting McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)). Second, the plaintiff must show that a governmental actor's behavior in depriving him of the interest in question was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

We have serious doubts whether the plaintiffs' allegations state a substantive due process claim, but that is not the issue before us. Rather, the issue is whether the *Rooker-Feldman* doctrine bars that claim, and we are convinced that it does not. The District Court concluded that the plaintiffs' substantive due process claim was inextricably

intertwined with the state court decision because the state court held that the plaintiffs had no right under Pennsylvania law to operate Desi's during the year in question. The District Court reasoned that if it were to hold that the plaintiffs had been deprived of a property interest protected by substantive due process, its decision would necessarily mean that the state court decision regarding the plaintiffs' property rights was incorrect. We must disagree with the District Court on this point because, as noted above, the presence or absence of property rights under state law is not dispositive of the question whether a person has a property interest protected by substantive due process.

We reach the same conclusion concerning the question whether the defendants' alleged campaign of harassment against the plaintiffs would "shock the contemporary conscience." Again, the state court found only that Desi's was a common nuisance under state law and that the defendants were justified in believing Desi's to be such. It does not follow from the state court's findings that the defendants' alleged act of singling out Desi's for harsher treatment with the goal of driving African-Americans and Latinos out of Wilkes-Barre would not shock the conscience. Accordingly, we hold that the *Rooker-Feldman* doctrine does not bar the plaintiffs' substantive due process theory.

## VI.

The defendants finally argue that since the *Rooker-Feldman* doctrine divests federal courts of jurisdiction to order relief that prevents the enforcement of an order previously entered by a state court, *Rooker-Feldman* precludes the plaintiffs' attempt to obtain an injunction against the closure of Desi's and further harassment by the defendants. We disagree. The plaintiffs' request for an injunction against the closure of Desi's pursuant to the state court's order is moot, as the state court's injunction has expired and Desi's has resumed operations. *See, e.g.*, *Orion Sales v. Emerson Radio Corp.*, 148 F.3d 840, 842 (7th Cir. 1998) (holding that where a District Court's preliminary injunction preventing the appellant from terminating its

agreement with the defendant had expired, the appellant's appeal of the District Court's decision to grant that injunction was moot); *Hodges v. Schlinkert Sports Assocs.*, 89 F.3d 310, 312 (6th Cir. 1996) (holding that where a non-competition clause in a contract had expired by its own terms, the plaintiff's appeal from the District Court's denial of the plaintiff's request for a preliminary injunction enforcing the clause was moot). Moreover, *Rooker-Feldman* does not apply to the plaintiffs' request for an injunction against future harassment, since no state court order currently governs the plaintiffs' conduct, and the requested injunction thus cannot prevent the enforcement of a state court order. Therefore, the aspect of the *Rooker-Feldman* doctrine prohibiting federal courts from granting relief that overrides relief granted by state courts does not preclude the plaintiffs' request for an injunction.

## VII.

Defendant Lupas requests that we affirm the judgment in his favor on the alternative ground that he is entitled to absolute prosecutorial immunity from suit for the acts that he allegedly took against the plaintiffs, because he performed those acts in his capacity as a state prosecutor. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). The plaintiffs respond that Lupas did not raise this defense in the District Court, and that in any event he is being sued for acts other than the prosecution of an action in court.

Absolute immunity is an affirmative defense that should be asserted in an answer. *See* Fed. R. Civ. P. 12(b). Here, the District Court dismissed the plaintiffs' action on its own motion before Lupas filed an answer, and therefore Lupas cannot be faulted for failing to raise the defense in the District Court. *Krohn v. United States*, 742 F.2d 24, 29 (2d Cir. 1984) ("[T]he absolute immunity defense, which on a motion to dismiss translates to failure to state a claim, is not a defense which must be raised on the first motion to dismiss or waived under" Federal Rules of Civil Procedure "12(g) [and] 12(h)(2)."). Nevertheless, we "generally decline to address issues that have not been passed upon below absent exceptional circumstances," *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 86 (3d Cir.

1989), and we see no such exceptional circumstances in this case. On the contrary, because of the fact-intensive nature of the inquiry as to whether the particular actions allegedly taken by Lupas fall within the scope of absolute prosecutorial immunity, we believe that it is preferable for that issue to be addressed initially by the District Court.

## VIII.

For the reasons explained above, we hold that the District Court erred in concluding that the plaintiffs' Equal Protection claim, their statutory discrimination claims, and their substantive due process claim are "inextricably intertwined" with the state court's order. We therefore reverse the dismissal of those claims. We are unable at this juncture to determine whether the same is true of the plaintiffs' procedural due process claim, and we therefore vacate that part of the District Court's decision and remand for further proceedings.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*