**Dianne L. BASS, Individually and on Behalf of all Others Similarly Situated,**

v.

**Johnny J. BUTLER, Secretary of Labor and Industry for the Commonwealth of Pennsylvania; *Richard Thompson, Director of the Pennsylvania Bureau of Workers' Compensation; Commonwealth of Pennsylvania, Through *Gerald J. Pappert, Attorney General, in his Official Capacity Dianne L. Bass, individually and as class representative, Appellant *Pursuant to Rule 43(c), F.R.A.P.**

No. 02–4027.

United States Court of Appeals, Third Circuit.

Argued Oct. 27, 2003.

Decided Nov. 30, 2004.

Ronald J. Smolow, (Argued), Smolow & Landis, Trevose, PA, for Appellant.

Claudia M. Tesoro, (Argued), Office of Attorney General of Pennsylvania, Philadelphia, PA, for Appellees.

Before SCIRICA, Chief Judge, NYGAARD, and AMBRO, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The initial complaint in this matter presented a constitutional due process challenge to the procedures Pennsylvania uses to evaluate workers' compensation claims. Over the course of more than ten years of active litigation in several courts, however, many layers of complex procedural issues have beclouded this initial claim. Appellant Dianne Bass now challenges the District Court's order dismissing her case for lack of subject-matter jurisdiction, which the court based on the *Rooker–Feldman* doctrine. For the reasons that follow, we will affirm the District Court's decision regarding the as-applied challenge, reverse with respect to the facial challenge, and remand the cause for the District Court to determine whether doctrines of preclusion bar the facial challenge.

## I. FACTS AND PROCEDURE

### A. Worker's Compensation Claim.

Unfortunately for the reader, this rather prolix explanation of the procedural twists and turns of this case is necessary to understand our decision. It all began with Bass filing a worker's compensation claim with the Pennsylvania Bureau of Workers' Compensation ("the Bureau") in November 1992, seeking compensation for an injury she allegedly sustained in January 1991. When injured, Bass worked as a clerk typist in a doctor's office. She claims she slipped on trash and ice in the office parking lot and hurt her back and neck. Bass's employer, Dr. Howard Rosenman, disputed the claim and denied most of Bass's material allegations. Pennsylvania Workers' Compensation Judge ("WCJ") Carol Mickey heard testimony in the case over two days in April and July 1993.

By agreement among the parties, the case was decided in two phases. The first phase ended in October 1994 when WCJ Mickey found Bass was serving in the course and scope of her employment when she fell. The case then moved into the second phase, to determine whether Bass was actually injured by the fall. The record indicated that Bass indeed suffered from back pain, which led to treatment and surgery. The record also indicated, however, that Bass had a history of back problems that predated her fall. The issue for the WCJ, therefore, was whether Bass's back pain was from a preexisting injury, or the injury she sustained when she fell.

WCJ Mickey left the Bureau in 1995, before she issued a decision in the second phase. WCJ Peter Perry assumed temporary responsibility for Mickey's pending cases. WCJ Perry held a hearing on Bass's claim in November 1995, but heard no testimony at that time. The parties submitted exhibits, and Perry officially closed the record and told the parties he would issue a decision.[1] Before Perry did so, however, WCJ Michael Rosen was hired to fill Mickey's position, and her cases were turned over to him. Bass was not notified of this change, in violation of Pennsylvania law. *See* 34 Pa.Code § 131.22.

Because Perry had announced he would decide Bass's case, he and Rosen co-authored the opinion. Rosen drafted the opinion, which was then reviewed and signed by Perry—and issued more than five years after Bass filed her claim. The August 8, 1996 decision denied Bass's claim, finding that her testimony was not credible as to what caused her back pain, and that the medical reports she submitted did not show a causal relationship between the fall and her back problems.

Bass appealed this decision to the Worker's Compensation Appeal Board ("WCAB"), arguing, among other things, that

> [t]he Judges improperly found the testimony of the claimant to be not credible. The claimant testified before Referee Mickey. The Judges assumed the handling of this case after the record was closed and they had no opportunity to observe the claimant, assess her demeanor, and were otherwise incapable of properly evaluating her credibility.

The WCAB affirmed the decision by Perry and Rosen, holding it was not within its province to reweigh the evidence or review credibility determinations. *Bass v. Rosenman*, No. A96–3187 (Pa. Workers' Comp. Appeal Bd. Dec. 17, 1997). Addressing Bass's concerns that neither of the deciding judges had been present for her testimony, the WCAB noted that Section 415 explicitly condoned this practice and that "testimony taken before the original WCJ is considered as though taken before the substituted WCJ." *Id.*, slip op. at 8. The WCAB also acknowledged Bass's "general constitutional contention," although "unsure of how, exactly, Claimant believes that she was denied due process." *Id.*, slip op. at 8 n. 2. The WCAB declined to address this claim, however, observing that only the judicial branch has the authority to review the constitutionality of a statute. *Id.*

## B. State Court Proceedings.

Bass filed a petition for review in the Commonwealth Court of Pennsylvania, again challenging WCJ Perry and Rosen's credibility findings and claiming that in reassigning her case to WCJ Rosen without notice, she "was denied a fair hearing and denied due process. WCJ Rosen did not hear the case, and petitioner was not informed until after the decision was rendered that he would be participating as a WCJ in this case."

The Commonwealth Court remanded the case to the WCAB, to give Bass an opportunity to establish that she had suffered prejudice when her claim was reassigned to WCJ Rosen without notice. *Bass v. Workers' Comp. Appeal Bd. (Howard D. Rosenman, M.D.)*, No. 182 C.D. 1998 (Pa. Commw. Ct. filed Aug. 12, 1998) ("*Bass I*"). On remand, the WCAB found that Bass had failed to establish prejudice from the reassignment without notice, and

---

1. In a previous decision in this case, we mistakenly stated that Perry transferred the case to WCJ Rosen before closing the record.

*Bass v. Butler*, 258 F.3d 176, 177 (3d Cir. 2001).

again declined to address her constitutional due process claims. *Bass v. Rosenman*, No. A96–3187 (Pa. Workers' Comp. Appeal Bd. Mar. 11, 1999). The WCAB reinstated the initial decision by Perry and Rosen. *Id.*, slip op. at 4–5.

Bass filed another appeal in the Commonwealth Court, objecting to the WCAB's refusal to address her constitutional challenges. Her brief elaborated on her constitutional claim at greater length than in her initial appeal:

> Section 415 ... and the Board's regulations and practices thereunder are unconstitutional. As a result, Claimant was denied Due Process by having her case decided by a WCJ who did not hear her case and by the reassignment of her case without notice....
>
> For a hearing to meet Due Process standards, it must be meaningful. In the WC context, this means that cases must be decided by WCJs who are competent to determine the most fundamental of issues, that of witness credibility. WCJs who are not present to receive the testimony are not competent to judge its credibility.

The Commonwealth Court rejected Bass's second petition. *Bass v. Workers' Comp. Appeal Bd. (Howard D. Rosenman, M.D.)*, No. 842 C.D.1999 (Pa. Commw. Ct. filed Feb. 18, 2000) (*"Bass II"*). The court held that Bass had failed to show actual prejudice in the reassignment without notice. *Id.*, slip op. at 4. The court further held that Bass had waived her facial attack on Section 415, by failing to raise the issue in her first appeal to the Commonwealth Court:

> In Bass' first appeal to this court, we addressed her challenge to the assignment of WCJ Rosen without prior notice to her. At that time, Bass received the appropriate relief in the form of a remand for a determination of whether the assignment to WCJ Rosen without ...

prior notice ... resulted in prejudice. As the Board noted, on remand Bass failed to make any showing of prejudice but simply argued that substitution is inherently prejudicial.

> Moreover, Bass cannot now assert for the first time that Section 415 of the Workers' Compensation Act is unconstitutional. By her failure to challenge the constitutionality of Section 415 in her first appeal to this court and failure to notify the Attorney General of a facial attack on the statute, Bass has waived this issue.

*Id.*, slip op. at 3–4 (internal citations and footnotes omitted).

After finding the issue waived, however, the court addressed the merits of the constitutional claim, and cited two state court decisions that either implicitly or explicitly upheld the constitutionality of Section 415. *Id.*, slip op. at 4–5 (citing *Arena v. Packaging Sys. Corp.*, 510 Pa. 34, 507 A.2d 18 (1986)) (holding that the same deference must be accorded to the findings of a substituted referee as is given to one who heard live testimony); and *Biagini v. Workmen's Comp. Appeal Bd. (Merit Contracting Co.)*, 158 Pa.Cmwlth. 648, 632 A.2d 956 (1993) (ruling specifically that Section 415 does not violate constitutional due process). The Commonwealth Court concluded by noting that "[i]n sum, the participation of WCJ Rosen did not deprive Bass of a fair adjudication by a qualified fact-finder." *Bass*, No. 842 C.D.1999, slip op. at 6. The Pennsylvania Supreme Court denied Bass's petition for *allocatur*. *Bass v. Workers' Comp. Appeal Bd. (Howard D. Rosenman, M.D.)*, 563 Pa.691, 760 A.2d 856 (2000).

## C. Federal Court Litigation.

Concurrent with the state proceedings, Bass pursued related litigation in federal court. On August 6, 1998, two days before

the remand order of *Bass I*, Bass filed a class-action complaint in federal district court. That complaint forms the basis of this appeal.

Filed under 42 U.S.C. § 1983, Bass's federal claim asserts that Section 415 is unconstitutional both facially and as applied. She asserts that the provision allowing for the substitution of WCJs is a facial violation of constitutional due process because it allows WCJs to make credibility decisions when they have not heard live testimony. She also contends that the law violated due process as it was applied to her, because she did not receive notice of the change of WCJs or have the opportunity to object. She seeks declaratory and injunctive relief against three defendants, none of whom was a party to the state proceedings: the Commonwealth of Pennsylvania; Johnny Butler, the secretary of the Pennsylvania Department of Labor and Industry; and Richard Himler, the director of the Bureau.[2]

The District Court initially denied a motion to dismiss Bass's claim based on the abstention doctrine, and heard testimony from WCJs Perry and Rosen.[3] *Bass v. Butler*, No. 98–4112, 1999 WL 391483, 1999 U.S. Dist. LEXIS 6643 (E.D.Pa. May 3, 1999). Both sides then moved for summary judgment. Instead of ruling on these motions, the Court decided to abstain because the case was before the Pennsylvania Commonwealth Court, and dismissed without prejudice to Bass reinstating the suit after she had exhausted her appeals in state court. *Bass v. Butler*, No. 98–4112, 2000 U.S. Dist. LEXIS 22281

(E.D.Pa. Feb. 3, 2000) (order dismissing without prejudice).

Three months after the Commonwealth Court's ruling in *Bass II*, the District Court denied Bass's motion for reconsideration and continued to abstain. *Bass v. Butler*, No. 98–4112 (E.D.Pa. May 18, 2000) (order denying motion for reconsideration). The Court observed that Bass still had the option of appealing the Commonwealth Court's decision to the Pennsylvania Supreme Court and the U.S. Supreme Court, and that she had therefore not exhausted her state action. *Id.*, slip op. at 2. The Court noted further that the decision of the Pennsylvania Commonwealth Court was *res judicata* on the District Court. *Id.*

Bass appealed the District Court's denial of the motion to reconsider. By the time we heard the appeal, the Pennsylvania Supreme Court had denied Bass *allocatur* and the time had elapsed for a petition of *certiorari* to the U.S. Supreme Court. As a result, we held that the appeal from the District Court's abstention order was moot. *Bass v. Butler*, 258 F.3d 176, 179 (3d Cir.2001). Because the District Court had not analyzed the case beyond abstention, we remanded for it to consider the defendants' claims that the action was precluded by the *Rooker–Feldman* doctrine, collateral estoppel, and *res judicata.*

On remand, the District Court dismissed Bass's complaint as barred by the *Rooker–Feldman* doctrine, and as a result did not consider any of the other arguments. *Bass v. Butler*, 224 F.Supp.2d 950 (E.D.Pa.

---

**2.** Defendant Himler retired in 2000, and pursuant to Fed.R.Civ.P. 25(d)(1), the District Court substituted the new director, Richard Thompson, as a defendant.

**3.** This refusal to abstain was apparently based on the mistaken impression that Bass's case was still in the workers' compensation administrative courts, which do not have the authority to decide constitutional issues. The Court was apparently unaware that these constitutional claims had been raised in her second petition to the Commonwealth Court, filed a month earlier on March 29, 1999.

2002). That is the order that is now before us for review.

## II. DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's decision to dismiss, which constitutes a final order. The complaint claims subject-matter jurisdiction based upon 28 U.S.C. §§ 1331 and 1343, but the District Court found that *Rooker–Feldman* barred federal jurisdiction.

### A. *Rooker–Feldman* Doctrine.

Application of the *Rooker–Feldman* doctrine is a question of federal subject-matter jurisdiction over which this Court exercises plenary review. *See, e.g., Whiteford v. Reed,* 155 F.3d 671, 672 (3d Cir.1998). The *Rooker–Feldman* doctrine is grounded in principles of federalism and designed to serve two primary functions: It furthers the interest of finality in court decisions, and ensures that federal courts show proper respect for their state counterparts. *See Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993). The doctrine stems from the understanding that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme] Court." *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).[4] A party's appropriate "recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under § 1257, not a separate action in federal court." *Parkview Assoc's P'ship v. City of Lebanon,* 225 F.3d 321, 324 (3d Cir.2000).[5] We have held that this doctrine applies to the decisions of lower state courts, and not only to state courts of last resort. *See Exxon Mobin Corp. v. Saudi Basic Industries Corp.,* 364 F.3d 102, 104 (3d Cir. 2004), cert. granted, — U.S. —, 125 S.Ct. 310, 160 L.Ed.2d 221 (2004); *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't,* 973 F.2d 169, 178 (3d Cir.1992).

*Rooker–Feldman* bars the lower federal courts from exercising jurisdiction over claims that were "actually litigated" in state court or are "inextricably intertwined" with a state court adjudication. *Parkview,* 225 F.3d at 325. As a general matter, a federal and state claim are deemed to be "inextricably intertwined" if success of the federal claim would serve to effectively void the state court decision. *Gulla v. N. Strabane Township,* 146 F.3d 168, 171 (3d Cir.1998) (internal citations and quotations omitted). In applying *Rooker–Feldman,* the important determination is not necessarily what was argued before the state court, but what *was decided* by the state court. Thus, "[t]he first step in a *Rooker–Feldman* analysis is to determine exactly what the state court held." *Id.* (internal citations and quotations omitted).

---

4. The doctrine derives its name from *Feldman* and a much earlier case, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

5. The Supreme Court's right to review state judgments stems from 28 U.S.C. § 1257(a), which states that:

   Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States.

Our jurisprudence requires that *Rooker–Feldman* is to be construed narrowly.[6] *Parkview*, 225 F.3d at 326 (reviewing cases in which the doctrine has been found inapplicable). "*Rooker–Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS*, 75 F.3d at 840. A federal proceeding is thus barred "only when entertaining the federal court claim would be the equivalent of an appellate review of that order." *Id.*

**B. Bass's As–Applied Challenge.**

■ Under the first step of *Rooker–Feldman*—determining "exactly what the state court held"—it is important to separate Bass's facial challenge to Section 415 from her challenge to the law as applied, although the line between the two arguments was blurred in earlier proceedings and Bass resists making the distinction in both her complaint and her brief to this Court. By untangling the issues, however, it seems clear that the Commonwealth Court ruled directly against Bass's claim that Section 415 *as applied to her* deprived her of constitutional due process.

In denying the as-applied challenge, the Commonwealth Court arguably did not engage in lengthy constitutional analysis,[7] or even specifically hold that the procedures employed against Bass did not deprive her

of constitutional due process. We have held, however, that "[i]f a state court considers and rejects a constitutional claim on the merits, a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of *Rooker–Feldman's* jurisdictional bar." *Gulla*, 146 F.3d at 172. In fact, we have held that a state court decision may activate *Rooker–Feldman* even if the state court only "implicitly" ruled upon the relevant issue. *Id.*

Based on these standards, the Commonwealth Court's finding that "the participation of WCJ Rosen did not deprive Bass of a fair adjudication by a qualified factfinder" is enough to establish that it adjudicated Bass's as-applied claim on its merits. *See Bass II*, No. 842 C.D.1999, slip op. at 6. The District Court therefore correctly concluded that the Commonwealth Court denied on the merits Bass's claim that Section 415 was unconstitutional as applied to her. *Bass*, 224 F.Supp.2d at 957.

Bass's attempt to characterize the decision on her as-applied claim as mere *dicta* is unpersuasive: The court considered her as-applied challenge in *Bass I* and remanded for fact-finding on the issue of prejudice, and in *Bass II* made a definitive decision that she had not suffered any prejudice, and therefore had not been deprived of due process.

A conclusion in federal court that Bass was denied due process by the reassignment of the WCJs would *directly* conflict

---

**6.** We reviewed the principles of *Rooker–Feldman* in, among other cases, *Desi's Pizza, Inc. v. City of Wilkes–Barre*, in which we found the *Rooker–Feldman* doctrine inapplicable. 321 F.3d 411 (3d Cir.2003). Since *Desi's Pizza* was published after the briefs in this case were filed, we requested supplemental briefs from the parties addressing the impact of *Desi's Pizza* on our decision. Upon review of these briefs and our opinion in *Desi's Pizza*, we are persuaded the case merely reiterated our well-established standards for the application of *Rooker–Feldman*, and did not an-

nounce any change in the applicable law. We also find that *Desi's Pizza* is easily distinguished from this case, because, like many *Rooker–Feldman* holdings, it was heavily dependent on the facts of the specific situation.

**7.** If we take the reasoning the court employed in response to the facial challenge as also applicable to the as-applied claim, however—certainly a plausible interpretation—the Commonwealth Court actually provided extensive support for this finding.

with the Commonwealth Court's finding that she did not suffer any prejudice as a result of this reassignment, and essentially overrule the decision of the state court. Since the success of this federal claim would thus serve to effectively void the state court decision, we hold that the claim is barred under a straightforward application of the *Rooker–Feldman* doctrine. *See Gulla,* 146 F.3d at 171 (citing *FOCUS,* 75 F.3d at 840).

## C. Bass's Facial Challenge.

■ With respect to Bass's *facial* challenge to the constitutionality of Section 415, *Rooker–Feldman* does not apply. On that claim, the Commonwealth Court held that Bass had waived the issue. Despite this finding, the court did address the issue "in any case" and found the claim meritless. After finding that the issue was waived, however, any discussion on the merits was *dictum,* because under Pennsylvania law lower courts are not allowed to address issues waived by the parties. "[W]here the parties fail to preserve an issue for appeal, the Superior Court may not address the issue, even if the disposition of the trial court was fundamentally wrong." *Knarr v. Erie Ins. Exch.,* 555 Pa. 211, 723 A.2d 664, 666 (1999); *see also*

*Arthur v. Kuchar,* 546 Pa. 12, 682 A.2d 1250, 1254 (1996) ("Issues not preserved for appellate review may not be considered by an appellate court, even where the alleged error involves a basic or fundamental mistake."); *Commonwealth v. Labron,* 543 Pa. 86, 669 A.2d 917, 919 (1995) ("It is clear ... that issues not raised in the lower courts, or raised at the trial level but not preserved on appeal, will not be considered by an appellate court.").

In this sense, the current case is analogous to *Gulla.* 146 F.3d at 172–73. In *Gulla,* we refused to apply *Rooker–Feldman* because the state court had dismissed the plaintiffs' claims for lack of standing, and "[u]nder Pennsylvania law, the court could not resolve the merits of the [plaintiffs'] claims if they lack[ed] standing to bring their suit." *Id.* at 172.[8] Similarly, in this case the Commonwealth Court was not empowered to evaluate Bass's facial claims after it found that the issue had been waived. Therefore, the facial constitutionality of Section 415 was not actually decided by the Commonwealth Court, and the issue is not barred by *Rooker–Feldman* on that basis. *See Whiteford,* 155 F.3d at 674 (observing that "this court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then *Rooker–Feldman* does not deprive the federal court of jurisdiction").[9]

---

**8.** The District Court in this case dismissed the similarity to *Gulla* by finding that "Plaintiff in the instant case clearly had standing." *Bass,* 224 F.Supp.2d at 957. But *Gulla* stands for the broader proposition that a court cannot at the same time decide that a case cannot be heard on its merits, and then proceed to decide it based on its merits.

**9.** The case here is distinguishable from our decision in *Guarino v. Larsen,* 11 F.3d 1151 (3d Cir.1993). *Bass,* 224 F.Supp.2d at 958 (citing *Guarino,* 11 F.3d at 1160). In *Guarino,* we concluded that a district court lacked jurisdiction to consider the federal claims of a plaintiff who had the chance to raise those claims during related proceedings in state court, but chose not to do so. *Id.* at 1160–61. Fearing an end run around *Rooker–Feldman,*

this Court found it reasonable to require a plaintiff in such circumstances to give the state courts a chance to decide his federal claims. *Id.*

Here, however, Bass did raise her constitutional claims before the Commonwealth Court on her second appeal to that court, and therefore could not have been holding them in abeyance for another attempt in federal court. The Commonwealth Court's finding that Bass had waived her claims by not raising them with sufficient specificity in her first appeal is not equivalent to the situation in *Guarino,* where the plaintiff withheld his federal claims during state proceedings. Whether she did so properly, Bass clearly made an attempt to have the state court consider her federal constitutional claims.

Moreover, the state court's decision is not inextricably intertwined with Bass's facial challenge to Section 415. As noted above, two claims are inextricably intertwined only if the federal court, in granting the relief sought, must either determine that the state judgment was erroneously entered or render the state court's judgment ineffectual. *ITT Corp. v. Intelnet International Corp.*, 366 F.3d 205, 211 (3d Cir.2004). In this case, the state court's judgment concluded that Bass was not actually prejudiced by the procedures provided under Section 415. *Bass II*, No. 842 C.D.1999, slip op. at 4. The question, however, is not whether a statute that is constitutional as applied is also constitutional on its face, but rather whether a statute may be unconstitutional—on its face—although the plaintiff suffered no demonstrable prejudice as a result of its application. This runs up against *Feldman* itself, in which the Supreme Court concluded that the plaintiff's claims that the relevant legal practice admission rule was unconstitutional were not barred by the D.C. court's earlier decision that the rule was fair as applied to the plaintiffs. The Supreme Court explained:

> "[T]o the extent that [the plaintiffs] sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints. [The plaintiffs] should have sought review to the District of Columbia Court of Appeals' judgments in this [Supreme] Court. To the extent that [they] mounted a general challenge to the constitutionality of [the rule], however, the District Court did have subject-matter jurisdiction over their complaints." *Feldman*, 460 U.S. at 482–83, 103 S.Ct. 1303 (1983).

Any conclusion that federal courts have no jurisdiction over Bass's facial challenge because a decision that the statute is unconstitutional would effectively overturn the state court's determination of fairness to Bass is thus in the face of *Feldman*.

Bass argues that the post-trial substitution of a WCJ who has heard no testimony, yet is authorized to make determinations of witness credibility, is a structural error to which the harmless error standard is inapplicable. If Bass is correct, the District Court could conclude that the resolution of Bass's claim by a WCJ who did not hear the witnesses testify was a structural error depriving Bass of constitutional due process, regardless of whether she was prejudiced. In this context, a federal court determination that Section 415 violates due process would render neither the state's actual prejudice determination erroneous, nor that judgment ineffectual.

### D. Identity of Defendants.

■ Bass may not avoid *Rooker–Feldman* in her as-applied challenge simply because she named different defendants in her federal claim. At the state level, her complaint was against the WCAB, while her federal complaint names the Commonwealth of Pennsylvania, the state Secretary of Labor and Industry, and the director of the Bureau. A strong argument could be made that these defendants are in privity with the WCAB, but we need not decide this issue because identity of the defendants is not required under *Rooker–Feldman*.

In support of her argument that identity of the defendants is required, Bass cites to *Valenti v. Mitchell*, 962 F.2d 288 (3d Cir. 1992). In refusing to apply *Rooker–Feldman* against plaintiffs who were not a party to the state action, we observed that "[w]e have found no authority which would extend the *Rooker–Feldman* doctrine to persons not parties to the proceedings before the state ... court and are referred

to none." *Valenti,* 962 F.2d at 297. Taken out of context, this statement seems to support Bass's contention, but its meaning is clarified by the next sentence, in which the Court analogizes *Rooker–Feldman* to collateral estoppel and *res judicata.* *Id.* Although *res judicata* may require identity of the parties, collateral estoppel usually only requires identity, or privity, of the party *against whom* preclusion is being sought. *See, e.g., Dici v. Pennsylvania,* 91 F.3d 542, 548 (3d Cir.1996).

Cases subsequent to *Valenti* suggest that the same is true of the *Rooker–Feldman* doctrine. In 1994, the U.S. Supreme Court held that under *Rooker–Feldman* "a party *losing in state court* is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (emphasis added). Thus, the *Rooker–Feldman* doctrine only requires identity of the party against whom the doctrine is being invoked. Just as with collateral estoppel, there is no convincing reason to require identity of the party seeking to bar a claim under *Rooker–Feldman.* *ITT,* 366 F.3d 205, 216 n. 19. To the contrary, requiring identity would effectively allow plaintiffs to reverse a state decision in federal district court merely by making an adjustment in the named defendants, establishing a loophole that would undermine the spirit and intent of *Rooker–Feldman.*

## E. Class Viability.

Bass contends that even if her personal claim is disqualified, the class she purports to represent should be permitted to proceed with its claim, either with her as its representative or with a substitute. But Bass is barred from continuing to represent the class for the same reasons she is barred from proceeding individually; she may not continue with her claim simply because she has fashioned it as a class action. Moreover, there is no class for anyone to represent. The District Court deferred judgment on the motion to certify the class action. *See Bass v. Butler,* No. 98–4112 (E.D.Pa. Jan. 6, 2000) (order directing parties to file motions and denying class certification). The only reason this case is labeled a class action is that Bass has styled it as such. The case on which Bass relies for her contention that another representative can be substituted is inapposite, because in that case the class had already been certified, and subject-matter jurisdiction and standing were firmly established. *See Goodman v. Lukens Steel Co.,* 777 F.2d 113, 124–25 (3d Cir.1985). Because no class has been certified here, if Bass' claim fails, the entire action must be dismissed. *See Bd. of Sch. Comm'rs v. Jacobs,* 420 U.S. 128, 129–30, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (holding that when the named plaintiffs are dismissed from the class action and the class itself has not been properly certified, the complaint of the class must be simultaneously dismissed).

## F. Preclusion Doctrine

As we previously noted, the doctrines of claim or issue preclusion may prevent the federal courts from hearing Bass's case. *Bass v. Butler,* 258 F.3d at 180 ("Under the facts and posture of the case, we believe it appropriate for the District Court to determine in the first instance the threshold issues, including jurisdiction, preclusion, and class certification."). Because the District Court dismissed the case on *Rooker–Feldman* grounds, it did not consider the effects of claim or issue preclusion. Thus, this case is remanded to the district court to determine whether res judicata or collateral estoppel bars Bass's claim.[10]

10. Given the procedural morass this case has generated, and the length of time the parties have endured awaiting finality, we are loath

### III. CONCLUSION

We will affirm the District Court's dismissal of Bass's as-applied challenge, based on the *Rooker–Feldman* doctrine. We will reverse and remand to the District Court regarding Bass's facial challenge because it is not inextricably intertwined with the state court's decision and issues remain to be determined.

to order a remand. Because, however, this decision should in the first instance be made

by the District Court, we believe it is best that we do so.